**Johnny RICHARDSON, Appellee,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Appellant.**

No. 93–7161.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1995.

Decided March 21, 1995.

Donald M. Gilberg, Washington, DC, argued the cause, for appellant. Mark G. Westerfield, Washington, DC, entered an appearance.

H. Vincent McKnight, Jr., Washington, DC, argued the cause, for appellee. With him on the brief, was Kevin B. Byrd, Washington, DC.

Before: WALD, SILBERMAN, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant National Railroad Passenger Corporation (Amtrak) seeks to nullify appellee Johnny Richardson's acceptance of an offer of judgement made pursuant to FED. R.CIV.P. 68. The district court disallowed Amtrak's effort to revoke the offer and refused to amend the judgment or grant a new trial. We affirm.

## I.

Johnny Richardson, a machinist employed by Amtrak, sustained an injury to his right shoulder in the fall of 1987 and several months later underwent surgery. He sued Amtrak in federal court under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1988), and persuaded a jury that his injury was largely attributable to his employer's negligence. Although his complaint sought $400,000, the jury awarded Richardson $500,000 in damages, which the court then reduced to $440,000 to comport with the jury's finding that Richardson was 12% contributorily responsible for his injury.

The district court agreed with Amtrak's post-trial arguments that the damages were excessive and offered Richardson the choice

between a new trial as to damages or a reduced judgment of $154,000. Richardson chose a new trial, and Amtrak, apparently, chose new and more active counsel. The latter immediately sought leave to conduct additional discovery and requested—for the first time—an independent medical examination of Richardson to assess the extent of his injury. A few days after the court granted these motions, on May 26, 1992, Amtrak presented Richardson with an offer of judgment of $150,000 pursuant to Rule 68. A Rule 68 offer is open for only 10 days, after which it is deemed withdrawn; if the plaintiff declines the offer or allows it to expire, he runs the risk of paying the defendant's subsequent costs of trial "[i]f the judgment finally obtained ... is not more favorable than the offer." FED.R.CIV.P. 68.

During the 10–day period, Amtrak notified Richardson that it had revoked its offer. It acted based on new information gleaned from discovery which called into question the trial testimony of Richardson's physician, Dr. Jeffrey Goltz, the only medical witness as to the nature of Richardson's injury. Dr. Goltz had testified that he had initially diagnosed Richardson's shoulder problem as bursitis and "impingement syndrome"—discomfort and diminished mobility resulting from the presence of some foreign object in the interstices of the shoulder joint; the other possible diagnosis, a tear in the rotator cuff, a musculotendinous area above the ball and socket of the shoulder joint, seemed highly unlikely after an arthrogram, which tests for such tears, yielded a negative result. After a course of physical therapy had proved largely fruitless, Dr. Goltz recommended surgery to correct the impingement, and Amtrak, which was paying Richardson's medical fees, approved the procedure. During the course of this surgery, Dr. Goltz testified, he discovered that Richardson indeed did have a tear in his rotator cuff—a "large" one. Dr. Goltz then, according to his testimony, mended the tear with seven sutures.

Amtrak's independent medical examination raised serious doubts as to the extent of Richardson's injury as well as Dr. Goltz's account of the surgical procedure performed. When deposed by Richardson's lawyer on June 3, 1992 (while the Rule 68 offer was outstanding), Amtrak's examining physician, Dr. Joseph Lenihan, stated his opinion that Richardson had never suffered a torn rotator cuff, and that the surgery Dr. Goltz claimed to have performed was therefore not required and, in fact, had not been performed. Dr. Lenihan considered the incision on Richardson's shoulder too small to permit a rotator cuff repair, especially repair of a "large" tear (although it did indicate that *some* type of surgery had been attempted). From his review, Dr. Lenihan believed that Richardson had suffered no more than a strain. The whole case evidently was, to his mind, a hoax.

The day after Dr. Lenihan's deposition, Amtrak received results from MRI testing of Richardson which, although ultimately found by the district court to be inconclusive, were at least compatible with Dr. Lenihan's testimony. That afternoon Amtrak sought to withdraw its Rule 68 offer by faxed letter to Richardson's counsel. The next day, June 5, Richardson filed an acceptance of the Rule 68 offer with the court. Amtrak immediately filed a "Motion to Set Aside Plaintiff's Purported Acceptance" on the grounds that the offer had been withdrawn, and the clerk, apparently for this reason, deferred entering the judgment. The Rule makes no provision, however, for delaying an entry of judgment pending a further hearing. It simply states that once the plaintiff "serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance ... and thereupon the clerk shall enter judgment." FED.R.CIV.P. 68. Be that as it may, formal entry of the Rule 68 judgment was put off until the questions raised by Amtrak's motion were resolved. Amtrak claimed that Rule 68 offers are revocable at the will of the defendant or, failing that, at least when induced by fraud. It asserted that its Rule 68 offer had been "induced by fraudulent conduct and representations by plaintiff and his physician," as it had been "predicated on the presumption, prior to initiation of discovery efforts, that plaintiff's claims, as set forth in the trial testimony of the plaintiff and Dr. Goltz, *although disputed,* were made in good-faith [*sic* ]" (emphasis added).

The trial court concluded that Rule 68 offers were generally irrevocable but allowed Amtrak to present its fraud claim in a series of evidentiary hearings. Prior to the conclusion of these hearings, Amtrak also filed an alternative motion, under Rule 60(b), seeking relief from the judgment against Amtrak entered following the trial—*i.e.*, the *initial* judgment—and an order for a new trial, also on the basis of the alleged fraud. The rationale for this second motion, as we understand it, was that Dr. Goltz's trial testimony had been false, that it had influenced the jury's judgment and all of the consequent post-trial proceedings, and that therefore the ultimate outcome of that first trial—Richardson's acceptance of the Rule 68 offer—was the traceable product of fraud. Amtrak's Rule 60(b) motion sought a new trial on damages in lieu of the first judgment (and with it, presumably, release from all the first trial's consequences, including the subsequent offer of judgment).

The hearings were held over nine months. In addition to Dr. Lenihan's testimony, Amtrak presented 15 other expert witnesses whom the district court found to be "highly credible" and who gave "compelling testimony" that seriously called into question whether Dr. Goltz had actually "performed the operation which he testified he had performed." *Richardson v. National Railroad Passenger Corp.*, 150 F.R.D. 1, 2–3 (D.D.C. 1993). In addition, Amtrak established the "uncontested fact" that Dr. Goltz had misrepresented his educational attainments, hospital privileges, and medical associations. *Id.* at 3.[1] Notwithstanding these revelations about the shortcomings of Richardson's initial case, the district court concluded that Amtrak had failed to prove fraud by "clear

and convincing evidence," as Dr. Goltz had countered Amtrak's claim with "strong evidence that the operation could have been performed as claimed." *Id.*

These findings were incidental, however, to the court's central determination, which was that even if Dr. Goltz's testimony had been false, Amtrak had failed to show that Richardson had been privy to any deception. The district court considered both of Amtrak's motions under the standards applicable under Rule 60(b), one of which provides that relief can be granted for frauds "of an adverse party." FED.R.CIV.P. 60(b)(3). Although some of the hearings' evidence indicated that Richardson might have exaggerated his injuries during Amtrak's independent examinations, the district court "d[id] not find this testimony sufficient to establish with any degree of reliability that Mr. Richardson was intentionally trying to mislead his examiners or was involved in a concerted effort with Dr. Goltz to misstate the extent of his injuries." *Richardson*, 150 F.R.D. at 8. The court also noted that, "even if it were credible," the evidence that Richardson may have been faking the extent of his injuries in mid–1993 "is not probative of the question of whether or not Mr. Richardson colluded with Dr. Goltz to mislead the jury and the Court *during* the trial," which took place in late–1991. *Id.* The district court also considered whether under the general language of Rule 60(b)(6) "any other reason justif[ied] relief from the operation of the judgment." It concluded that the equities cut against Amtrak and therefore denied its motions, although not without "a degree of reluctance." *Id.* at 9–10. Following the court's ruling, Amtrak's Rule 68 offer was formally entered as the judgment.[2]

---

1. The district court considered these falsehoods "[p]articularly troubling," but only with regard to the initial judgment, for the court determined that Amtrak's counsel had been aware of Dr. Goltz's "credential problem" prior to making the offer of judgment and therefore could not rely upon those misstatements in seeking to set aside Richardson's acceptance. *Id.* at 7, 9.

2. After the district court's final ruling, Amtrak filed another motion seeking a new trial, this time under Rule 59. Amtrak did not specify the subsection of Rule 59 upon which it was relying. Rule 59(a) provides for a new trial, but it is

doubtful that it would apply to this situation, because the judgment challenged was not the result of a trial. Rule 59(e) allows a movant to seek to "alter or amend the judgment" (relief that includes vacating a judgment, *see Moy v. Howard Univ.*, 843 F.2d 1504, 1505–06 (D.C.Cir. 1988)), but it seems obvious to us that, whatever relief is sought, a Rule 59 motion that challenges a judgment arrived at following consideration of a Rule 60(b) motion cannot broaden the grounds for relief beyond those provided by Rule 60(b). Since we conclude that the district court was well within its discretion in denying Amtrak's Rule 60(b) motion, it follows that there is no

## II.

██ Amtrak's Rule 60(b) motion for a new trial (limited to damages) is anomalous because it is directed to the initial judgment entered after the first trial—anomalous since Amtrak has already received exactly the relief it purports to seek. The first judgment was, after all, set aside and a new trial of Richardson's damages ordered. But for the subsequent Rule 68 offer, Amtrak would be in precisely the position it wishes to be, which means, of course, that Amtrak's dispute is entirely with the second judgment, not the first. Perhaps Amtrak perceives that there is some sort of litigating advantage in seeking to convince the district court (or us) to set aside the first judgment twice, but it certainly eludes us. To be sure, Amtrak's quarrel with the second judgment is based on a claim that testimony given at the trial was tainted and that the consequent second judgment was therefore procured through fraud. Nevertheless, it makes absolutely no sense to seek to set aside a judgment that has already been set aside.

We are brought, then, to the real question in the case: Can Amtrak somehow avoid the second judgment, the consequence of its Rule 68 offer? Amtrak claims that this judgment was invalid, as its Rule 68 offer had been revoked prior to Richardson's acceptance. Its "Motion to Set Aside Plaintiff's Purported Acceptance," filed immediately after Richardson filed the notice of acceptance, successfully delayed the entry of the judgment and thereby achieved a perhaps ostensibly more favorable procedural posture for arguing that the offer had been effectively revoked. Richardson maintains, however, that Rule 68 offers cannot be revoked by the offeror-defendant and that, as a matter of law, such offers remain outstanding for 10 days. Therefore the clerk was obliged to enter the judgment.

The portion of the Rule that governs the making, duration, and acceptance of offers provides that

> [a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against

the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.

FED.R.CIV.P. 68.

██ As is apparent, the Rule does not refer to the possibility of a revocation or withdrawal prior to the expiration of the 10 days. Amtrak argues that the Rule implicitly incorporates the law of contracts, and that under that law, as is well known, an offer can be revoked at any time prior to acceptance. To support the disputed first proposition, Amtrak relies on an opinion by the California Supreme Court interpreting the California counterpart to Rule 68 and holding that traditional contractual principles govern the making and acceptance of offers of judgment. *See T.M. Cobb Co., Inc. v. Superior Court*, 36 Cal.3d 273, 204 Cal.Rptr. 143, 147, 682 P.2d 338, 342 (1984) (in bank). Whatever the merits of the California Court's interpretation of its state rule, the few federal courts that have considered the revocability of offers under Rule 68 have concluded otherwise. All have treated Rule 68 offers as at least generally irrevocable during the 10–day period. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1240 (4th Cir.1989); *Fisher v. Stolaruk Corp.*, 110 F.R.D. 74, 75 (E.D.Mich. 1986); *see also Radecki v. Amoco Oil Co.*, 858 F.2d 397, 402 (8th Cir.1988) (dicta). This view has been endorsed by commentators on the Rule as well. *See* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3004 (1973 & Supp.1994); 7 MOORE'S FEDERAL PRACTICE ¶ 68.05 (1994); Udall, *May Offers of Judgment Under Rule 68 Be Revoked Before Acceptance?*, 19 F.R.D. 401, 406 (1957); Simon, *The Riddle of Rule 68*, 54 GEO.WASH.L.REV. 1, 5 n. 13 (1986).

difficulty in its subsequent denial of Amtrak's     Rule 59 motion.

We agree with the federal courts that have examined the question, but we would put it categorically, as did the district judge in *Fisher*, 110 F.R.D. at 75, by stating that a Rule 68 offer is simply not revocable during the 10–day period. Rule 68 sets forth a rather finely tuned procedure; unlike a normal contract offer, an offer of judgment under the Rule imposes certain consequences that can be costly for the plaintiff who declines the offer. The Rule is thus designed to put significant pressure on the plaintiff to think hard about the likely value of its claim as compared to the defendant's offer. In return, the plaintiff, as we understand the scheme, is guaranteed 10 days to ponder the matter (as though the plaintiff had paid for a 10–day option). If the Rule were to be read as Amtrak urges, the pressure on the plaintiff would be greater than the Rule contemplates, because the Rule so construed would allow a defendant to engage in tactical pressuring maneuvers. *See* Udall, *May Offers of Judgment Under Rule 68 Be Revoked Before Acceptance?*, 19 F.R.D. at 405.

This does not mean that a defendant offeror is totally without recourse once an offer has been made. We agree with both the Fourth Circuit's opinion in *Colonial Penn* and the district court's determination below that a defendant is entitled to relief if the offer is induced by actual misconduct on the part of the plaintiff. *See Colonial Penn*, 887 F.2d at 1240; *Richardson*, 150 F.R.D. at 3. We think, however, that the proper way to proceed in that event is for the defendant to attack the judgment produced by the Rule 68 offer—which upon notice of acceptance is to be automatically entered by the clerk—under Rule 60, which provides for "Relief from Judgment or Order." The relevant portion of that Rule, 60(b), states that

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud ... misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason

justifying relief from the operation of the judgment.

FED.R.CIV.P. 60.

The district court was not precise in its treatment of Amtrak's two motions (the explicit Rule 60(b) motion, it will be recalled, was directed at the judgment entered after the trial, which had already been set aside), but it considered them together and thereby effectively regarded Amtrak's "Motion to Set Aside Plaintiff's Purported Acceptance" as equivalent to a Rule 60(b) motion to challenge the second judgment—by which the judge implicitly recognized that the judgment should have been entered upon notice of acceptance. In any event, we agree with the district court that Amtrak was certainly not entitled to relief under Rule 60(b)(3) as to that judgment once it was determined that Richardson bore no responsibility for the testimony of Dr. Goltz. Amtrak alleged fraud in the inducement against Richardson but has not produced evidence sufficient to prove that claim, and Rule 60(b)(3) requires a showing that the alleged "misconduct" is attributable to "an adverse party."[3] Recognizing this difficulty, Amtrak argues that this case "warrants an *extension* of existing law" that would treat expert testimony as equivalent to that of "an adverse party." Such an "extension" would, of course, substitute a less restrictive limitation for the one expressly adopted under the Rules.

Rule 60(b)(6) admittedly gives the district judge broad latitude to relieve a party from a judgment for "any other reason justifying relief from the operation of a judgment." And it may be that in the appropriate case misconduct by a witness other than an "adverse party" could constitute grounds for relief under this standard. But we cannot possibly conclude that the district court abused its broad discretion here. The Rule 68 offer in this unusual case was made between two trials; more typically it would simply follow discovery. Surely a defendant could not expect to challenge a Rule 68 judg-

---

3. The Eleventh Circuit has held that frauds justifying relief under Rule 60(b)(3) include those committed by third parties with complicity of opposing counsel. *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1505 (11th Cir.1985). We have no occasion to address that question, as Amtrak made no claim that Richardson's counsel was or should have been aware that Dr. Goltz had lied.

ment based merely on the ground that a deposition witness did not tell the exact truth, as a result of which the defendant overvalued the claim against it when making the Rule 68 offer. In the absence of any showing of misconduct on the part of the plaintiff, we think the district court acted well within its discretion. In hindsight, it is clear that Amtrak should have defended itself more carefully at the outset. It is much too late for it to challenge Richardson's case now.[4]

   \*     \*     \*     \*     \*     \*

Accordingly, for the foregoing reasons, we affirm the district court.

*So ordered.*

---

4. Amtrak has made several other arguments which we have considered and rejected and which do not, in our view, warrant discussion.