1999-NMCA-048

977 P.2d 1012

Barbara A. SHELTON and James M. Shelton, individually and as parents and next friends of Virginia Heider and Michael L. Heider, minors, Plaintiffs–Appellants,

v.

Joseph E. SLOAN, State Farm Mutual Automobile Insurance Co. and State of New Mexico Highway Department, Defendants–Appellees.

No. 18525.

Court of Appeals of New Mexico.

Feb. 15, 1999.

Lisa K. Vigil, Jacob G. Vigil, Vigil Law Firm, P.A., Albuquerque, for Appellants.

Randall W. Roberts, Cynthia A. Braun, Simone, Roberts & Weiss, P.A., Albuquerque, for Appellee Joseph E. Sloan.

HARTZ, Judge.

{1} Rule 1–068 NMRA 1999 provides an incentive for defendants to make reasonable settlement offers before trial. Under the Rule a defendant may serve the plaintiff with an offer to allow judgment to be taken against the defendant for a specified amount, together with accrued costs. If the plaintiff does not accept the offer and ultimately obtains a judgment less favorable than the offer, the plaintiff must pay the costs incurred after the date of the offer. If the plaintiff accepts the offer within ten days of service of the offer, judgment may be entered in accordance with the offer.

{2} The threshold issue before us in this case is whether a plaintiff may still accept an offer within the ten-day period despite making a previous counteroffer during the peri-od. We hold that a Rule 1–068 offer is irrevocable during the ten-day period provided by the Rule, and a plaintiff can accept the offer any time during the period, regardless of whether the plaintiff has made a counteroffer to try to obtain a more favorable settlement.

{3} We then address (1) whether a plaintiff is no longer bound by a Rule 1–068 agreement when the defendant challenges the validity of the plaintiff's acceptance on the eve of trial and prior to entry of judgment on the agreement and (2) whether a district court can approve a settlement on behalf of a minor when an intervening jury verdict has found (a) that the minor suffered substantially greater damages than provided by the settlement and (b) that the defendant was almost totally responsible for the damages. We reverse the district court's judgment and remand for a determination whether the settlement is fair to the children.

## I. BACKGROUND

{4} Barbara and James Shelton (Plaintiffs), individually and on behalf of their children, Michael and Virginia Heider, sued Joseph E. Sloan and the New Mexico Highway Department after Sloan's car crashed head-on into the Sheltons' car during a snowstorm in December 1991. Mrs. Shelton was seriously injured. Mr. Shelton and Michael were less seriously injured. Virginia was not physically injured but suffered mental distress. Trial was held in Santa Fe in September 1996. This dispute arises from efforts by Sloan and Plaintiffs to settle the children's claims during the month before trial.

{5} On August 28, 1996, Sloan mailed formal Rule 1–068 offers of judgment of $35,001 plus costs for Michael and $20,001 plus costs for Virginia. Plaintiffs counteroffered on September 5. Sloan responded the same day as follows:

This will confirm that you have ... made an offer to settle the claim of Mike for $50,000 and $35,000 for Virginia. This offer has been rejected. While we have repeatedly attempted to settle this matter, we want to re-extend the offer to Mike of $35,000 and Virginia of $20,000.

{6} On September 10, Plaintiffs filed in district court an Acceptance of Offers of Judgment (the Acceptance). They attached a bill of costs in the amount of $16,482.05. There is no dispute that the acceptance was within the ten-day period provided by Rule 1–068. *See* Rule 1–006 NMRA 1999 (computation of time).

{7} On Friday, September 20, three days before trial, Plaintiffs filed a motion in limine seeking to exclude from trial any reference to the settlement on behalf of the children. The record on appeal does not include a transcript of any hearing on the motion. No order was entered.

{8} On Sunday, the eve of trial, Sloan put the Plaintiffs' acceptance in question by hand-delivering to their attorneys a Notice of Objection (the Notice). The Notice reads as follows:

COMES NOW, Defendant Sloan, by and through counsel, and hereby objects to the purported costs of the Plaintiffs. As grounds therefore [sic], the Defendant would state and show as follows:

1. *The Plaintiffs rejected this Offer of Judgment and accordingly the Offer of Judgment is not withstanding* [sic]. *The Plaintiffs made a counter offer which, as a matter of law, serves to reject the Offer of Judgment.*

2. In addition, the purported costs are not reasonable, proper, nor appropriate items to tax as costs. These fall into a number of raw categories. They include personal expenses such as flowers, non-taxable expenses such as phone calls, photocopies, facsimile charges and legal research to matters which were not properly taxable as costs as they did not involve this Defendant. This includes depositions unrelated to this Defendant including, but not limited to, Luke, Cantwell, etc. It further includes matters which are not proper such as a claim for Dr. McQuain when his deposition was not taken prior to *any purported acceptance of the offer* and did not testify as to any of the Plaintiffs. Furthermore, the [sic] claim airfare for Dr. McQuain yet no such airfare was paid. They have also made a claim for Dr. Jabczenski, and he did not testify at any time prior to the Offer of Judgment nor prior to *the purported acceptance of the offer of judgment.*

(Emphasis added.)

{9} Despite the Notice, Sloan's insurer wrote two settlement checks to Plaintiffs. They were in the amounts stated in the Acceptance, except that they did not include costs. The checks, dated the first day of trial, were sent to the office of Plaintiffs' attorneys, which was located in Albuquerque.

{10} Trial began in Santa Fe on September 26, with both Sloan and the State of New Mexico Highway Department as defendants. The two defendants had separate counsel. During their opening statements, Plaintiffs' attorney described the children's injuries and Sloan's attorney stated that the children's injuries were "minimal to nonexistent." The children were not called as witnesses. In closing argument Plaintiffs' attorney described Michael's medical bills, Virginia's emotional damages, and both children's loss of their mother's guidance and counseling. He argued that the children as well as the parents were "entitled to receive fair compensation" for Mrs. Shelton's injury and future physical limitations. In response, Sloan's attorney again referred to the children's lack of injury, pointing out that they had failed to testify: "[W]hy a fifteen-year-old couldn't come here is another question. Why didn't they put on the kids? Because they're doing well. Because they've done well. I think there's no evidence of any problem with Michael or Virginia. Virginia had nothing. Michael was treated." The attorney for the Highway Department did not allude to the children's injuries or damages in his closing argument.

{11} The jury reached a verdict on Friday, September 28. It found Sloan to be 99 percent at fault and James Shelton to be one percent comparatively negligent. No fault was ascribed to the Highway Department. The jury assessed damages as $500,000 for Mrs. Shelton, $50,000 for Mr. Shelton, and $100,000 each for Michael and Virginia. When Plaintiffs' attorneys returned to Albuquerque, they sent back the children's settlement checks with the notation "Rejected."

{12} After trial Sloan filed a Motion to Enforce Settlement and/or For Sanctions, re-

questing that judgment be entered on the acceptance of the Rule 1–068 offers. The district court granted the motion after a hearing. Plaintiffs then filed a motion to reconsider, which was denied after a hearing. At the first hearing Sloan's attorney stated that throughout the trial both sides agreed, and represented to the court, that the children's claims had been settled. The district court concurred that it had "operated under that understanding the entire trial." Plaintiffs' attorneys disputed the point.

{13} There is no evidence in the record regarding any discussions during trial between counsel and the court with respect to a possible settlement. We have no transcript of any such discussions, and during the post-trial hearings no one testified about such discussions. All that is in the record are the unsworn assertions of the attorneys and the district court's expression of its recollection.

{14} According to Sloan's attorney, the settlement was discussed twice: (1) on the Monday morning when trial began, during a discussion of whether the jury should be informed of any settlement with the children, and (2) during a discussion of jury instructions. He stated that during those discussions he had objected to the children's names being placed on the jury verdict form. The district court also recalled that it had dealt with the issue of the children's settlement at the outset of trial:

[T]he first thing on Monday in Santa Fe, we had a hearing where it was proffered to me or issued [sic] that they had settled, because we were trying to decide how we were going to handle the highway department.

And it was basically whether we were going to inform the jury of even that settlement, and I think it was a matter of discussion, and it was decided that we didn't need to inform them of anything, because number one, the settlement was only with respect to the children . . . . and it didn't matter anyway, because whatever they found for the children would be applicable against the Highway Department anyway . . . .

We went through the whole thing that way. We went through settlement of jury instructions that way . . . .

{15} Plaintiffs' attorneys remembered Monday morning differently. According to one, his co-counsel said, "Judge, we have a problem with any apparent settlement." The other remembered telling the court that she "didn't even know if [a settlement] existed." She remembered the court responding that it would deal with the matter later, but "that was all that was said about it." During the hearing on the motion to reconsider, Plaintiffs' attorney stated:

Your Honor, I recognize that you, as the judge in this matter, were under the impression that a settlement was reached. I had made an offhanded [sic] comment, and I admit that's what it was, on the Monday morning before trial that I didn't know if we had a settlement . . . .

Initially we did believe there was a settlement up to the Sunday before trial . . . .

Now, if we thought there was a settlement or hoped there was a settlement or you thought there was a settlement, that wouldn't create a contract, because the Defendants are who destroyed it.

She continued, "Now, when it came down to the issue of whether the children should be put on the verdict form or not, . . . [a]rguing about the settlement wasn't the issue. It was that the settlement didn't belong in front of the jury in any way, and it didn't—and it was never put before them. No one was harmed."

{16} As to the meaning of the Notice and the status of the Rule 1–068 offer, Sloan's attorney stated: "We had filed an offer of judgment, they made a counteroffer, we rescinded, it's all set forth in there. Then they purported to accept it with an outrageous cost bill which needs to be dealt with at some point." He also stated that Plaintiffs' attorneys faxed a demand for the children's settlement checks on the Friday before trial, and then demanded payment "during trial." Sloan's brief to this court states that the demand was made on the morning of trial. Plaintiffs' attorneys acknowledged in district court that they had sent Sloan's attorney a demand letter, but they have not clarified when it was sent.

{17} In addition, Sloan's attorney stated that he had not litigated the children's dam-

ages. Sloan's brief on appeal asserts that his attorney "would have handled the trial much differently if plaintiffs had advised the court there was no settlement." It explains that Sloan's attorney mentioned the children in his closing argument only because "the jury did not know about the settlement and likely would have been confused if he had not addressed their claims at all." Plaintiffs' counsel, on the other hand, pointed to Sloan's closing statement to support her contention that Sloan "fully litigated" the children's claim. The district court sided with Sloan on this issue. It said that Sloan's attorneys "weren't defending against the children at that trial"; and accordingly it indicated that even if it rejected the settlement, it would grant a new trial rather than enter judgment in favor of the children against Sloan based on the jury verdict.

{18} As previously stated, the district court granted Sloan's motion to enforce the settlement and denied Plaintiffs' motion for reconsideration. At the second hearing the district court explained that it was not deciding whether there was actually a settlement agreement. Rather, it ruled that Plaintiffs were estopped from denying a settlement by their representations to the court and opposing counsel before and during trial.

{19} Finally, Plaintiffs argued that the district court had to approve any settlement involving a minor and that the settlement should not be approved because it was so much less than the jury verdict. The district court, however, ruled that the "settlement was fair, just and reasonable at the time it was made."

{20} On appeal Plaintiffs contend that (1) Sloan's eve-of-trial denial that there was a settlement destroyed any efficacy of their acceptance of the offer of judgment and (2) the district court erred in approving a settlement on behalf of the children that was far less than the jury verdict. To put the matter in proper context, we must first decide whether Plaintiffs could accept the offer of judgment after making their counteroffer. We then address Plaintiffs' issues.

## II. RULE 1–068

■ {21} In enforcing the settlement, the district court declined to analyze the validity of the actual offer and acceptance under Rule 1–068. Relying on the doctrine of estoppel, the court upheld the agreement on the ground that Plaintiffs led the court to believe, throughout the trial, that there was a settlement. We may affirm a judgment, however, on a ground not relied upon by the district court, ·if it is fair to do so. *See Naranjo v. Paull,* 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App.1990). In this case we hold that there was a proper acceptance of the offer pursuant to Rule 1–068. It is fair to resolve the issue on this ground because it was addressed in the district court and on appeal, and the facts pertinent to the issue are uncontested; indeed, they are a matter of record and uncontestable. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d·209, 212 (Ct.App.1994) (unfair "to affirm on a fact-dependent ground not raised below").

{22} Rule 1–068 states, in pertinent part:

At any time more than ten (10) days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten (10) days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon such judgment may be entered as the court may direct. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact than an offer has been made but not accepted does not preclude a subsequent offer.

The decisive question here is whether an offeree may accept a Rule 1–068 offer within the ten-day period even after the offeree has made an unsuccessful counteroffer.

■ {23} We apply traditional contract principles to interpret an offer and acceptance under Rule 1–068. *See Pope v. The Gap, Inc.,* 1998–NMCA–103, ¶ 10, 125 N.M. 376, 961 P.2d 1283. Sloan relied on a

traditional contract principle in his eve-of-trial Notice, when he contended that Plaintiffs' counteroffer constituted a rejection of Sloan's Rule 1–068 offer of judgment. As a general rule, a counteroffer is treated as a rejection of the offer, freeing the offeror of any obligation under the offer. *See* Restatement (Second) of Contracts §§ 36(1)(a), 39(2) (1981) (hereinafter "Restatement").

■ {24} Nevertheless, the language of Rule 1–068 and the application of traditional contract principles in the context of Rule 1–068 both require us to find a proper acceptance in this case. This view is supported by decisions and commentary interpreting Federal Rule of Civil Procedure 68, which is identical to Rule 1–068 in the pertinent language. These interpretations of Federal Rule 68 are persuasive. *See Pope,* 1998–NMCA–103, ¶ 10, 125 N.M. 376, 961 P.2d 1283. The federal authorities treat Rule 68 offers as irrevocable offers which ordinarily cannot be withdrawn during the ten-day period. *See Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1240 (4th Cir.1989); *Richardson v. National R.R. Passenger Corp.,* 49 F.3d 760, 765 (D.C.Cir.1995); *Butler v. Smithfield Foods, Inc.,* 179 F.R.D. 173 (E.D.N.C.1998); *United States v. Hendricks,* No. 92–C–1461, Memorandum Order, 1993 WL 226291 at *2–*3 (N.D.Ill. June 24, 1993); *Fisher v. Stolaruk Corp.,* 110 F.R.D. 74, 75 (E.D.Mich.1986); 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3004 (2d ed.1997) (hereinafter Wright & Miller); 13 James Wm. *Moore, Moore's Federal Practice* ¶ 68.04[3] (3d ed.1998); Morris K. Udall, *May Offers of Judgment Under Rule 68 Be Revoked Before Acceptance?,* 19 F.R.D. 401 (1957); *see generally Hernandez v. United Supermarkets of Okla., Inc.,* 882 P.2d 84, 87–88 (Okla.Ct.App.1994) (discussing state cases and noting great weight of authority that offers of judgment are irrevocable).

{25} We agree with these authorities. Rule 1–068 states simply that a judgment can be entered on an offer of judgment "[i]f within ten (10) days after the service of the offer the adverse party serves written notice that the offer is accepted." The language of the Rule reads as if an offer of judgment is continuously available for acceptance during the ten-day period set forth in the Rule. The

intervention of a counteroffer appears to be irrelevant.

{26} This reading also follows from policy considerations. The ten-day time limit in Rule 1–068 places considerable pressure on the plaintiff to evaluate the case. An ill-conceived rejection can carry a hefty financial penalty, because if the verdict provides the plaintiff less than the offer, the plaintiff must pay the costs incurred by the defendant in defending the lawsuit after the rejection. *See Dickenson v. Regent of Albuquerque, Ltd.,* 112 N.M. 362, 363, 815 P.2d 658, 659 (Ct.App.1991). Given the consequences when the plaintiff errs in rejecting what turns out to be a good offer, it seems appropriate to permit the plaintiff the full ten days to investigate the case, including exploring alternative settlement possibilities. *See Richardson,* 49 F.3d at 765 (if offer could be revoked, "the pressure on the plaintiff would be greater than [Rule 68] contemplates, because the Rule so construed would allow a defendant to engage in tactical pressuring maneuvers.")

{27} Moreover, this reading is consistent with traditional contract law. Judge George Donworth, a member of the Advisory Committee that drafted Rule 68, likened an offer under the Rule to "an option that you have for ten days based upon a valuable consideration." Wright & Miller, *supra,* § 3004 at 102 n. 3 (quoting Proceedings of the Institute at Washington, D.C., Oct. 6, 7, 8, 1939, and of the Symposium at New York City, Oct. 17, 18, 19, 1938, p. 299). He indicated that although the offeree has not paid for the 10–day period of irrevocability, the risk of consequences acts as consideration for the offeree's power to ponder the offer for the full ten days.

■ {28} Under traditional contract law an offeree who gives consideration for an option retains the power to accept the offer for the full duration of the option, regardless of intervening negotiations and counteroffers. *See* Restatement, *supra,* § 37; *cf. Strata Prod. Co. v. Mercury Exploration Co.,* 1996–NMSC–016, 121 N.M. 622, 627, 916 P.2d 822, 827 (option supported by consideration is irrevocable during period stated). Federal courts that have considered the effect of a

counteroffer on a Rule 68 offer of judgment have concluded that the same principle applies: an offeree may accept a Rule 68 offer of judgment even after making a counteroffer. *See Butler,* 179 F.R.D. at 176; *Hendricks,* 1993 WL 226291, at *3.

{29} In addition, even in the absence of consideration to support the option, an offeree's power of acceptance is not always terminated by a counteroffer. The Restatement, *supra,* Section 39(2) states: "An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree." In our view, offers and counteroffers in the context of Rule 1–068 manifest such a contrary intention. The offer of judgment can be thought of as the opening move in a high-stakes contest of limited duration. The offer impresses upon the plaintiff the need to consider settlement seriously, and the defendant is well-advised to take advantage of the plaintiff's attention to the matter. Both parties understand that if they cannot reach a different agreement within the ten-day limit set by Rule 1–068, the powerful consequences of the Rule take effect.

{30} Therefore, we hold that an offeree may accept an offer pursuant to Rule 1–068 even after making a counteroffer. This result is faithful to the language of Rule 1–068 and is supported by the policy behind the Rule and traditional principles of contract law.

{31} Applying this proposition to the present case, we hold that Plaintiffs could still accept Sloan's offer of judgment even though they had countered with a higher offer. Within the ten-day period of the Rule, Plaintiffs accepted Sloan's offer in language that exactly mirrored the language of the offer. Consequently, either party could file the offer and acceptance and obtain judgment accordingly. *See Pope,* 1998–NMCA–103, ¶ 21, 125 N.M. 376, 961 P.2d 1283 ("Rule 1–068 leaves no discretion in the district court to do anything but to enter the judgment once an offer of judgment has been accepted.").

## III. EFFECT OF SLOAN'S NOTICE

■ {32} Having determined that Plaintiffs validly accepted Sloan's Rule 1–068 offer, we now turn to Plaintiffs' arguments that the district court should not have ordered enforcement of the agreement. Their first contention is that the agreement was invalidated by the eve-of-trial conduct of Sloan's attorney. According to Plaintiffs, the Notice delivered the day before trial "purposefully destroyed the entire reason the children's case was settled prior to trial." They accuse Sloan of trying to create a situation in which Sloan could choose the settlement figure or the verdict, depending on which was lower. As they put it, "[t]here is no purpose to settle a case before trial, if Defendants can litigate it and cho[o]se either the settlement or the verdict, depending on which benefits them." They conclude that because of the Notice, there was no longer any consideration for the agreement, so the agreement was unenforceable.

{33} Plaintiffs' argument goes too far. Despite the Notice from Sloan, Plaintiffs could still have enforced the agreement if they had chosen to. The gist of Plaintiffs' concern is simply that the Notice created uncertainty; they did not know whether or not the children had a settlement. But even though the uncertainty could create problems for Plaintiffs, it did not eliminate all consideration for the agreement. Ultimately, Plaintiffs would be entitled to precisely what they bargained for pursuant to Rule 1–068.

{34} On the other hand, we see potential merit to the equitable underpinnings of Plaintiff's argument. Despite the existence of an enforceable agreement, Sloan might be barred from enforcing it if the Notice prejudiced Plaintiffs. The Notice might be construed as a representation that Sloan would not file the Rule 1–068 offer and acceptance. What if Plaintiffs decided that they no longer liked the agreement, would not file the offer and acceptance themselves, and would proceed to try the case? Could Sloan then change his mind and file the documents after representing that he would not do so? *Cf.* NMSA 1978, § 55–2–611 (1961) (Uniform Commercial Code provision barring retraction of anticipatory repudiation after other

party has materially changed its position). Even if Plaintiffs would have preferred to settle, the Notice placed their attorneys in a dilemma. They could ignore the challenge to the efficacy of the settlement and proceed to trial as if the children's claims against Sloan were settled. If so, however, they would risk a later ruling that the settlement was not effective, in which event their failure to litigate the issue could result in significant harm to their clients. Alternatively, they could proceed to litigate the issue vigorously. But such efforts might detract from their ability to prepare for and pursue other issues at trial. Although Plaintiffs' attorneys might be able to make an informed choice of which alternative to select by researching the validity of their acceptance of the Rule 1–068 offer, such last-minute research would require time and effort that could otherwise be devoted to trial preparation; and, in any event, our research indicates that there were no definitive rulings one way or the other upon which counsel could have relied. We assume that Sloan's counsel must have recognized that delivering the Notice on the eve of trial could severely disrupt Plaintiffs' trial preparation. It is also possible, however, that there was no disruption. Plaintiffs may have presented the same evidence regarding injury to the children regardless of whether the children still had a claim against Sloan in addition to their claim against the Highway Department.

{35} We cannot resolve on this appeal whether there are equitable grounds for setting aside the Rule 1–068 agreement. The evidence is uncertain and, more importantly, the issue was not clearly joined in district court. All we can do is note that Rule 1–060(B) NMRA 1999 provides for setting aside judgments on various equitable grounds and that such relief is available with respect to a judgment entered pursuant to Rule 1–068. *See Richardson,* 49 F.3d at 765; Wright & Miller, *supra,* § 3004, at 104 and § 3005.2, at 115–16.

{36} Moreover, under New Mexico law a party could raise equitable arguments to prevent entry of a Rule 1–068 judgment in the first place. As previously mentioned, Rule 1–068 provides that "such judgment *may* be entered as the court may direct." (Emphasis added.) It would certainly seem appropriate to deny entry of judgment when a ground set forth in Rule 1–060 has been established. After all, the judgment could be set aside on such a ground once judgment has been entered. Hence, Rule 1–060(B) grounds can be considered on remand in this case when the district court must determine whether to enter judgment on the Rule 1–068 settlement.

{37} Were the settlement to be set aside, the remedy ordinarily would be to set the case for trial. If, however, the district court were to reconsider what it said at the post-trial hearings and rule that Sloan's liability to the children was litigated at the trial that has already been conducted, the court could enter judgment for the children against Sloan based on that verdict.

## IV. APPROVAL OF SETTLEMENT INVOLVING MINORS

{38} At the hearings on the post-trial motions regarding enforcement of the settlement, Plaintiffs argued that even if there had been an agreement, the district court should not enforce it. They contended that the inadequacy of the settlement was demonstrated by the jury verdict.

{39} If the settlement had been between competent adult parties, the inadequacy of the settlement would not be an issue. In such cases the court entering the judgment generally has no occasion to review the merits of the settlement. When a minor is a party, however, it is apparently common practice for the district court to review the settlement to determine whether it is fair to the child. The legal basis for that review has not been clearly established.

{40} Some jurisdictions have a statute or rule requiring judicial approval of settlements negotiated on behalf of minors. In interpreting such provisions, courts have held that a settlement of a minor's claim is voidable and may be set aside by the court if not fair to the child, *see Danes v. Automobile Underwriters, Inc.,* 159 Ind.App. 505, 307 N.E.2d 902, 906 (1974), or even that such an agreement is essentially of no legal effect and can be repudiated by the minor's representative prior to judicial approval, *see Dacanay v. Mendoza,* 573 F.2d 1075, 1079 (9th

Cir.1978); *Scruton v. Korean Air Lines Co.,* 39 Cal.App.4th 1596, 46 Cal.Rptr.2d 638, 642 (1995).

{41} New Mexico, however, has no such statute or rule governing settlements of claims on behalf of minors. There is a statute requiring judicial approval of settlements on behalf of "incapacitated persons," *see* NMSA 1978, § 38–4–16 (1975), but the statutory definition of "incapacitated person" excludes minors, *see* NMSA 1978, § 38–4–14 (1989). The power of the minor's representative with respect to settlements is therefore left to the common law. *See Collins v. Tabet,* 111 N.M. 391, 399 n. 5, 806 P.2d 40, 48 n. 5 (1991).

{42} What, then, is the district court's authority to protect a minor with respect to a Rule 1–068 settlement? We recognize that we recently said that "Rule 1–068 leaves no discretion in the district court to do anything but to enter the judgment once an offer of judgment has been accepted." *Pope,* 1998–NMCA–103, ¶ 21, 125 N.M. 376, 961 P.2d 1283. Ordinarily that is true. But our Rule 1–068 recognizes that on occasion there may be power in the district court to reject a settlement. The Rule provides that once "the offer and notice of acceptance together with proof of service thereof" have been filed, "such judgment may be entered as the court may direct." This language differs from Federal Rule 68, which states that once the proper pleadings have been filed, "the clerk shall enter judgment." The language of our rule would appear to permit the court to reject a Rule 1–068 settlement on behalf of a minor if it is unfair to the minor. And, in our view, our precedents require the court to do so. "[A] minor in court is represented not only by the guardian ad litem [or next friend], but by the court itself." *Bonds v. Joplin's Heirs,* 64 N.M. 342, 344, 328 P.2d 597, 599 (1958); *see also Haden v. Eaves,* 55 N.M. 40, 47, 226 P.2d 457, 462 (1950). We need not decide on this appeal whether all settlements involving minors must be approved by a court. We do hold, however, that when a settlement involving a minor is presented to a court for approval and the information before the court indicates that the settlement is not fair to the minor, the court must reject the settlement.

{43} We now apply these propositions to the present case. The parties had entered into a settlement agreement pursuant to Rule 1–068. Plaintiffs could not repudiate this agreement. But when the agreement was presented to the court for approval, they could bring to the court's attention information indicating that the agreement was not fair to the children.

{44} They did so. The information upon which they relied was the jury verdict. The jury found Sloan to be 99 percent at fault and the children's damages to be three to five times the amount of the settlement. In approving the settlement, however, the district court apparently did not take the verdict into account. Its order states that the "settlement was fair, just and reasonable *at the time it was made.*" (Emphasis added.) This was the wrong test.

{45} The court's role in reviewing a settlement is to "represent[ ]" the minor. *Bonds,* 64 N.M. at 344, 328 P.2d at 599. It is not reviewing the adequacy of the performance of the minor's attorney in reaching the agreement. Rather, it is reviewing the fairness of the agreement itself. Therefore, it is appropriate for the court to consider all the information before it, not just the information available to the minor's attorney at the time of settlement. Although there is scant authority on the matter, the case law supports the view that the fairness of the settlement should be determined as of the time the matter is presented to the court for decision. *See Anderson v. Housworth,* No. 94–CV–1935 (ERK), Memorandum & Order, 1996 WL 635711, at *6 (E.D.N.Y. Oct.23 1996); *Power v. Tomarchio,* 701 A.2d 1371, 1374–75 (Pa.Super.Ct.1997); *In re Bussman,* 39 Or.App. 287, 592 P.2d 239, 242 (1979) ("A meaningful exercise of that responsibility [to protect the best interests of the minor child] requires the probate court to make its determination on the basis of circumstances at the time approval is sought."), *rev'd sub nom. Hansen v. Bussman,* 287 Or. 527, 601 P.2d 794 (1979) (en banc).

{46} We recognize that this result is somewhat one-sided. The settlement can be set aside only if intervening events—events between the time that the settlement is

reached and the time that the settlement is presented to the court for approval—show that the minor should get a better settlement. If intervening events show that the opposing party would be better off without the settlement, nothing can be done. But this one-sidedness is an inevitable consequence of permitting judicial review of settlements with minors; even in the absence of intervening events, the non-minor party can never benefit, but can be harmed, by judicial review. Moreover, the non-minor can, to a great extent, protect itself against the vicissitudes of intervening events. If the settlement is pursuant to Rule 1–068, the non-minor can promptly submit the settlement to the court for approval. Outside the Rule 1–068 context, the non-minor can condition its agreement to settle upon prompt judicial approval of the settlement.

{47} Because the district court failed to find the settlement fair as of the time that the settlement was presented to the court for approval, we must reverse the order approving the settlement. We do not foreclose the court from approving the settlement on remand. But the jury verdict should be considered in estimating the risks and benefits to the children from further litigation. We defer to the trial judge in assessing fairness to the children. *Cf. Sanchez v. Sanchez*, 107 N.M. 159, 162, 754 P.2d 536, 539 (Ct.App.1988) (deferring to district court's discretion in awarding custody of child).

## V. CONCLUSION

{48} For the above reasons, we reverse the order of the district court and remand for further proceedings consistent with this opinion. Costs on appeal are awarded to Plaintiffs.

{49} **IT IS SO ORDERED.**

RUDY S. APODACA, Judge and JAMES J. WECHSLER, Judge, concur.