2001-NMCA-078

33 P.3d 296

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Justin HUNTER, Defendant–Appellant.**

**No. 21,677.**

Court of Appeals of New Mexico.

Sept. 10, 2001.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steven S. Suttle, Ass't Attorney General, Albuquerque, NM, for Appellee.

Michael Kiernan, David G. Crum & Associates, Albuquerque, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} This case requires us to address the authority of a trial court to sentence a juvenile, charged with first degree murder but found guilty of second degree murder, as an adult after holding only a typical adult sentencing hearing. By that, we mean the trial court did not consider the factors required to be considered or make the findings required to be made pursuant to the statute that permits juveniles found guilty of second degree murder to be sentenced as adults. We hold that the trial court did not have the requisite authority, and accordingly we reverse and remand for further proceedings. We address summarily the other issues raised by Defendant.

**FACTS AND PROCEEDINGS**

{2} Defendant was seventeen years old when he went to a pool hall to play pool with friends. Defendant and a friend were challenging others to play for money. Although conflicting evidence was elicited on this point,

Defendant was described as having an "attitude," giving people dirty looks, and making hostile remarks. The victim was described similarly. Defendant and the victim engaged each other verbally and then with fists. It was disputed whether Defendant fought back when the victim, who was larger than Defendant, was punching him. Defendant fell back toward a bench, pulled a gun from his pocket, and fired several shots in rapid succession at the victim, killing him. Defendant then fled the premises and either dropped or lost the gun thereafter.

{3} Defendant was indicted on an open count of murder, including first degree murder, second degree murder, and manslaughter, and one count of tampering with evidence. The trial court directed a verdict on first degree murder, and the jury was instructed on second degree murder, voluntary manslaughter, tampering with evidence, and self defense, but was not instructed on involuntary manslaughter, as Defendant had requested.

{4} Following the verdict finding Defendant guilty of second degree murder and tampering with evidence, the trial court continued Defendant on bond and ordered a presentence report. Three months later, the matter came before the trial court for sentencing. Defendant's father and Defendant himself first addressed the court. The father explained that Defendant was physically assaulted by the victim prior to the shooting and was basically a good boy who deserved to be sentenced as a juvenile. Defendant apologized to the victim's family and asked for forgiveness. The victim's grandmother, two aunts, the victim's future mother-in-law, and the victim's father then addressed the court. They asked for justice, they asked the court to send a message, and some rejected Defendant's apology. The State argued that Defendant's age, the circumstances of the crime, and the crime itself were too serious for the trial court to even consider a juvenile sentence. Defendant's counsel confessed that he had not dealt with the juvenile code before, told the trial court that it could do whatever it wanted, and requested that the trial court accept one of the recommendations of the pre-sentence report, which was

to give a juvenile sentence. The trial court considered the verdict of the jury, finding Defendant guilty of killing the victim without provocation and not in self defense, and also considered that Defendant had not been involved with the law before. The trial court acknowledged that it would not make either side happy, and said that "this was an adult crime and that [Defendant] should pay a penalty as a result of being an adult." The trial court then sentenced Defendant to concurrent terms for the two offenses, giving Defendant fifteen years for the second degree murder and tampering with evidence convictions and one year for the firearm enhancement for a total of sixteen years of which eight were suspended. The trial court entered a standard adult judgment and sentence.

{5} Defendant's appeal raised the following issues: (1) whether NMSA 1978, § 32A–2–20 (1996) is unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and whether the trial court abused its discretion in giving Defendant an adult sentence; (2) whether Defendant's conviction for second degree murder was supported by sufficient evidence; (3) whether the trial court erred in refusing to instruct on involuntary manslaughter; and (4) whether trial defense counsel was ineffective for not calling Defendant to testify on his own behalf. We issued an order, asking for supplemental briefing on a question related to the first issue-whether it was fundamental or jurisdictional error for the trial court to have sentenced Defendant as an adult without considering all the factors set forth in Section 32A–2–20(C) and without making the findings required by Section 32A–2–20(B). Not surprisingly, Defendant's supplemental brief contends that it was fundamental or jurisdictional error, while the State's brief contends that it was not. Interestingly, we take judicial notice of our records in another case, *see State v. Anaya,* 1997–NMSC–010, ¶ 13, 123 N.M. 14, 933 P.2d 223, and note that the State confessed error in *State v. Joseph S.,* Ct.App. No. 21,691, on the issue of whether an amenability hearing is necessary when a child charged with first degree murder pleads guilty to second degree murder.

## DISCUSSION
### SENTENCING AS AN ADULT

▇ {6} We recently had occasion to canvass the sentencing possibilities for juveniles convicted of various crimes. In *State v. Gonzales*, 2001–NMCA–025, ¶¶ 16–17, 130 N.M. 341, 24 P.3d 776, *cert. granted*, 130 N.M. 254, 23 P.3d 929 (2001), we explained that there were three categories of juvenile offenders under the 1993 revisions to the Children's Code: (1) serious youthful offenders-youths fifteen years of age or older and charged with first degree murder, who were entirely excluded from the Children's Code unless found guilty of lesser offenses; (2) youthful offenders-youths fourteen years of age or older and convicted of certain enumerated crimes or certain multiple crimes; and (3) delinquent offenders-all others. Youthful offenders may be sentenced as adults or given juvenile sanctions; delinquent offenders must be given juvenile sanctions.

{7} Defendant in this case was a serious youthful offender, having been charged with first degree murder for an offense he committed when he was seventeen years old. However, once the trial court directed a verdict on that charge and once the jury found Defendant guilty only of second degree murder, Defendant was no longer a serious youthful offender. Section 32A–2–20, entitled "[d]isposition of a youthful offender," states in Subsection F that a "fourteen to eighteen year old child charged with first degree murder, but convicted of an offense less than first degree murder, is subject to the dispositions set forth in this section." The dispositions set forth in that section grant the trial court the discretion to invoke either an adult sentence or juvenile sanctions. Section 32A–2–20(A). However, "the court *shall* make the following findings in order to invoke an adult sentence: (1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and (2) the child is not eligible for commitment to an institution for the developmentally disabled or mentally disordered." Section 32A–2–20(B) (emphasis added). "In making the findings set forth in Subsection B of this section, the judge *shall* consider" eight enumerated factors relating to the seriousness of the offense, the history of the child, and the protection of the public and prospects for rehabilitation of the child using currently available services and facilities. Section 32A–2–20(C) (emphasis added).

{8} It has long been held that a trial court's authority to sentence is only that which has been provided by statute and that a sentence unauthorized by statute is jurisdictional and can be raised for the first time on appeal. *See State v. Sparks*, 102 N.M. 317, 324–25, 694 P.2d 1382, 1389–90 (Ct.App. 1985). The rule set forth in *Sparks* may be traced through *State v. Dominguez*, 115 N.M. 445, 456, 853 P.2d 147, 158 (Ct.App. 1993), to the Supreme Court's recent case of *State v. Martinez*, 1998–NMSC–023, ¶ 12, 126 N.M. 39, 966 P.2d 747. There, the Court stated that a trial court's power to sentence is derived exclusively from statute, which limited the judicial authority as a matter of separation of powers inasmuch as it is the legislature's sole province to establish penalties for offenses. *Id.*

▇ {9} We relied on *Martinez* in *State v. Muniz*, 2000–NMCA–089, ¶¶ 9, 14, 19, 129 N.M. 649, 11 P.3d 613, *cert. granted*, 129 N.M. 599, 11 P.3d 563 (2000), for the proposition that, in a case involving a serious youthful offender who pleaded guilty to lesser crimes, a trial court had no authority to sentence the offender as an adult unless it was with express statutory authorization or unless the juvenile expressly waived the issue in a voluntary, knowing, and intelligent manner. In other words, simple failure to raise the issue does not preclude its being raised for the first time on appeal.

{10} We deem it noteworthy that *Martinez* and *Muniz* were both decided well after the time that the Supreme Court limited the concept of jurisdictional error to those instances in which the court was completely powerless to act. *See State v. Orosco*, 113 N.M. 780, 783, 833 P.2d 1146, 1149 (1992). Nonetheless, the *Orosco* Court did preserve the concept of fundamental error and included within that concept the situation where an error so prejudiced a defendant's rights as to require a reversal. *Id.* This concept is similar to the construct of fundamental error as that was articulated in *State v. Garcia*, 46

N.M. 302, 309, 128 P.2d 459, 462 (1942): "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive."

{11} We believe that the error in this case, under the facts and circumstances of this case, fits this construct. The error was the failure to follow the statutory conditions precedent to sentencing Defendant as an adult. The circumstances were that there was a genuine factual issue as to whether Defendant should be so sentenced. The error went to the entire foundation of Defendant's sentence.

■ {12} In the context of children and the court's authority over them, we have frequently said that the authority of the court is limited by the Children's Code. *See In re Zac McV.*, 1998–NMCA–114, ¶ 9, 125 N.M. 583, 964 P.2d 144; *In re Jacinta M.*, 107 N.M. 769, 771, 764 P.2d 1327, 1329 (Ct. App.1988); *In re Doe*, 88 N.M. 632, 634–35, 545 P.2d 491, 493–94 (Ct.App.1975). Even in ordinary civil cases, our courts are especially solicitous of the rights of juveniles. *See Shelton v. Sloan*, 1999–NMCA–048, ¶ 42, 127 N.M. 92, 977 P.2d 1012 (stating that minors in court are represented not only by guardians ad litem or next friends but also by the court itself). We deem it fundamental that children who are not convicted of first degree murder and who appear to be amenable to rehabilitation have a basic and essential right not to be sentenced as adults unless the trial court fulfills the requirements of Section 32A–2–20(B) and (C). In such a case, the trial court must make the findings required by Section 32A–2–20(B) after evaluating the circumstances in light of Section 32A–2–20(C). *See In re Aaron L.*, 2000–NMCA–024, ¶¶ 25–26, 128 N.M. 641, 996 P.2d 431 (holding it to be fundamental error in a children's court case for the trial court to fail to interrogate the child as to the voluntariness and knowingness of his admission to the charges when there are doubts about whether the child knew what he was admitting and appreciated the consequences); *cf. Martinez v. Martinez*, 1997–NMCA–096, ¶¶ 20–21, 25, 123 N.M. 816, 945 P.2d 1034 (holding, in a civil case, that it is error requiring a remand when a trial court fails to make findings justifying a decision to refuse to award costs when the record indicates that an award of costs is warranted).

{13} In this case, while it appeared that the parties and the court were aware that either an adult sentence or juvenile sanctions were possibilities, none of the participants appeared aware of the statutory requirements for invoking an adult sentence. The sentencing hearing was a sentencing hearing, not an amenability hearing. The trial court heard statements that trial courts typically hear from victims and defendants and their families. It did not hear evidence from any experts. *Cf. Gonzales*, 2001–NMCA–025, ¶¶ 41–44, 130 N.M. 341, 24 P.3d 776 (indicating that the trial court heard from many experts on the question of the defendant's prospects for rehabilitation and amenability to treatment as well as on the availability of facilities). The only expert opinion before the trial court was the presentence report, which apparently concluded that Defendant was amenable to treatment in available facilities. The trial court here did not make the required findings, either orally or in written form. All the trial court said was "this was an adult crime and that [Defendant] should pay a penalty as a result of being an adult."

■ {14} We hold that the adult sentence was unauthorized under the circumstances of this case and that the lack of authorization amounted to fundamental error. Specifically, considering all of the facts of this case, there is a close issue concerning whether the trial court should impose an adult sentence on this Defendant, and we are not confident that the result would have been the same had proper procedures been followed. We reverse the sentence and remand with instructions to the trial court to hold an amenability hearing, to consider the factors set forth in Section 32A–2–20(C), and to make the findings required in Section 32A–2–20(B) before reimposing an adult sentence or to impose juvenile sanctions if the required findings are not made. In the absence of an amenability hearing and findings, we deem it inappropri-

ate at this time to review Defendant's issue alleging abuse of discretion, in which he contends that we should remand with instructions that juvenile sanctions should be imposed.

## ISSUES ADDRESSED SUMMARILY

■ {15} Defendant's *Apprendi* issue was answered adversely to him in *Gonzales,* 2001–NMCA–025, ¶ 32, 130 N.M. 341, 24 P.3d 776.

■ {16} Defendant's sufficiency of the evidence contention boils down to a contention that he established self defense or provocation as a matter of law. We cannot agree. Particularly in light of the fact that the victim was unarmed and the jury did not have to believe the defense theory, it was for the jury to determine whether Defendant used an amount of force necessary under the circumstances or was provoked in such a way than an ordinary person would have reacted as Defendant did. *See* UJI–14–222 NMRA 2001 (defining sufficient provocation in terms of an "ordinary person of average disposition"); *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (holding that a jury can reject a defendant's version); *State v. Johnson,* 1998–NMCA–019, ¶ 16, 124 N.M. 647, 954 P.2d 79 (indicating that reasonableness in the use of force is generally a jury question); *State v. Duarte,* 1996–NMCA–038, ¶ 4, 121 N.M. 553, 915 P.2d 309 (indicating that deadly force in self defense is not available to respond to hand-and-fist combat).

■ {17} Defendant's contention that the trial court erred in refusing to instruct the jury on involuntary manslaughter is answered by *State v. Abeyta,* 120 N.M. 233, 241–42, 901 P.2d 164, 172–73 (1995), *abrogated on other grounds by State v. Campos,* 1996–NMSC–043, ¶ 32 n. 4, 122 N.M. 148, 921 P.2d 1266, in which the Supreme Court held that shooting at someone, if not justified in perfect self defense, would be a felony, and not a lawful act, and would thus not fall within the involuntary manslaughter statute.

■ {18} Defendant's ineffective assistance contention is answered by the fact that there is no record showing that Defendant wanted to testify. Matters not of record present no issue for review. *See State v. Wood,* 117 N.M. 682, 687, 875 P.2d 1113, 1118 (Ct.App.1994).

## CONCLUSION

{19} Defendant's convictions are affirmed. The adult sentence is vacated, and this matter is remanded for an amenability hearing and subsequent proceedings as indicated by the result of that hearing.

{20} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge and MICHAEL D. BUSTAMANTE, Judge.