2007-NMSC-060

171 P.3d 750

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Isidro DOMINGUEZ, Defendant–
Appellant.**

**No. 29,652.**

Supreme Court of New Mexico.

Oct. 26, 2007.

Liane E. Kerr, LLC, Liane E. Kerr, Albuquerque, NM, for Appellant.

Gary K. King, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

BOSSON, Justice.

{1} Defendant Isidro Dominguez appeals his convictions for first-degree murder, conspiracy to commit a felony, kidnaping, armed robbery, tampering with evidence, and felon in possession of a firearm. We affirm all of Defendant's convictions.

## BACKGROUND

{2} On November 6, 2004, a sheriff received a radio dispatch to proceed to a Shell station on Airport Road in Santa Fe, where a dead body identified as Panfilo Valencia–Soto ("Victim") had been found in the trunk of an abandoned car on County Road 56. The car, a purple Dodge Stratus, was in an arroyo, approximately one mile from the gas station, which is opposite a trailer park where Defendant and his wife, Annette Dominguez ("Co–Defendant" or "Annette"), resided. Defendant and Annette were customers of Victim, who sold heroin for a living. Jose Carrasco–Rodriguez ("Carrasco") lived with Victim and Victim's girlfriend, Lisa Cano ("Lisa"), and helped with their drug trade.

{3} Lisa testified at trial that she last saw Victim on the evening of November 5, 2004, when he left with Carrasco in Lisa's car to go to Defendant's home. Carrasco testified that when he and Victim arrived at Defendant's trailer, they were invited inside. As Carrasco entered the home, someone hit him on the back of his head, knocking him to the floor. After he fell to the floor, his hands and feet

were tied. Carrasco testified that Annette was holding a shotgun in front of him and Victim. Carrasco further testified that he could hear Victim being struck and somebody asking for the "money and drugs" in Spanish. Someone took Carrasco's wallet, which contained approximately $160.00. After several minutes, Carrasco heard a gunshot, but he did not see who fired the gun.

{4} Carrasco testified that Defendant then untied the knot binding Carrasco's feet, took him outside, and put him in the back seat of the purple Dodge Stratus that Carrasco and Victim had driven to Defendant's home. When Defendant returned to the house, Carrasco untied his hands, crawled into the driver's seat, and drove away. After driving for a while, Carrasco pulled the car to the side of the road, looked in the trunk, and saw Victim's body. He then drove the car back to Airport Road, left the car on the side of the road, walked to the Shell Station, and called Lisa.

{5} Lisa testified that when she arrived to pick up Carrasco, she noticed blood on his shirt and marks on his wrists. She asked where the car was, and Carrasco replied that Defendant and Annette had kidnapped Victim and that Lisa should not call the police because Defendant would kill Victim, even though Carrasco already knew Victim was dead. Two days later, Lisa and Carrasco returned to the apartment they shared with Victim and found the police there. The police searched the apartment and later informed Lisa that they had discovered Victim's body in the trunk of her car. Lisa told the police about Defendant and Annette and took them to their home.

{6} After standing trial along with his wife, Annette, Defendant was convicted of all charges, from which he now appeals directly to this Court. See N.M. Const. art VI, § 2; Rule 12–102(A)(1) NMRA (direct appeal to Supreme Court from conviction of first degree murder).

## DISCUSSION

{7} Defendant raises three issues on appeal. First, Defendant argues that he was unfairly prejudiced when the trial court denied his motion to sever the felon in possession of a firearm charge from his other charges. Second, Defendant claims error when the trial court allowed the State to impeach its own witness by reading into evidence prior statements of that witness, rather than asking questions and then using the transcript to impeach. Third, Defendant argues that the trial court erred in admitting the testimony of three State rebuttal witnesses.

## Severance

{8} Prior to trial, Defendant filed a motion to sever his felon in possession of a firearm charge from his other charges, which the trial court denied. On the morning of trial, Defendant renewed his motion to sever, and the court again denied the motion. Unsuccessful in his attempts at severance, Defendant then pled guilty to the felon in possession of a firearm charge, and proceeded to trial on all remaining charges. Defendant contends that the trial court's refusal to sever resulted in a denial of his due process rights, including his right to a fair trial, his right to remain silent, and his right to fully confront and cross-examine the witnesses against him. Under the circumstances of this case, we disagree.

{9} Initial joinder of charges under Rule 5–203(A) NMRA was appropriate for these offenses "based on the same conduct." *State v. Duffy*, 1998–NMSC–014, ¶ 43, 126 N.M. 132, 967 P.2d 807. Recently, in *State v. Gallegos*, we recognized that "Rule 5–203(A) is not a discretionary or permissive rule; it demands that the State join certain charges." 2007–NMSC–007, ¶ 10, 141 N.M. 185, 152 P.3d 828. However, we emphasized in *Gallegos*, 2007–NMSC–007, ¶ 16, 141 N.M. 185, 152 P.3d 828 that Rule 5–203(C) provides for severance when "it appears that a defendant . . . is prejudiced by a joinder of offenses or of defendants by the filing of a statement of joinder for trial." We stated that we will not reverse a trial court's decision not to sever, even if erroneous, "unless the error *actually* prejudiced the defendant." *Gallegos*, 2007–NMSC–007, ¶ 18, 141 N.M. 185, 152 P.3d 828 (emphasis added). As we will explain, Defendant experienced no actual prejudice at trial because he pled guilty to the felon in possession charge before trial. Therefore,

no evidence of his criminal past ever reached the jury.

{10} Traditionally, a trial court's decision whether to grant a motion for severance has been discretionary, "and one test for abuse of discretion is whether prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial." *State v. Jones,* 120 N.M. 185, 186, 899 P.2d 1139, 1140 (Ct.App. 1995); *see also State v. Ruiz,* 2001–NMCA– 097, ¶ 11, 131 N.M. 241, 34 P.3d 630 ("A defendant is unfairly prejudiced when joinder allows the jury to consider evidence that would not otherwise be admissible under Rule 11–404(B) NMRA 2001, if the trials were severed."). The question then is whether the evidence of each crime would be admissible in a separate trial of the other. *Jones,* 120 N.M. at 186, 899 P.2d at 1140. As our Court of Appeals aptly noted, "proof of other crimes has a tendency to prejudice the minds of the triers of fact and to predispose them to a belief in the accused's guilt." *State v. Roybal,* 115 N.M. 27, 31, 846 P.2d 333, 337 (Ct.App.1992).

{11} Evidence of Defendant's prior unrelated crime most certainly would not have been admissible in a separate trial of Defendant's remaining charges, unless Defendant elected to waive his Fifth Amendment right to silence and testified in his own defense. This is true in most cases involving evidence of a criminal history-an especially virulent form of bad acts evidence that is usually inadmissible under Rule 11–404(B) NMRA and Rule 11–403 NMRA. Those accused of crimes have a constitutional right to remain silent, which is often exercised for the very purpose of keeping evidence of unrelated crimes from the jury. A felon in possession of a firearm charge puts the otherwise irrelevant fact of a prior crime before the jury, putting pressure on the accused to testify so as to explain his past, and thereby compromising his constitutional right to silence. Fundamental constitutional rights should not be so easily undermined.

{12} Therefore, courts must realize that they risk committing error any time they fail to sever a felon in possession charge from the principal crimes. This does not necessarily mean an independent jury trial for the felon in possession charge is required. There is no reason such a straightforward crime could not be tried directly to the court, with the defendant's consent, based primarily on public documents or even stipulations, much as with habitual offender proceedings. Bifurcation is another possibility.

{13} As we have stated, judicial error by itself is not necessarily grounds for reversal in the absence of actual prejudice. However, our job differs from that of the trial court. As we made clear in *Gallegos,* in determining whether a defendant suffered actual prejudice, "we have the luxury of conducting a hindsight review." 2007–NMSC–007, ¶ 46, 141 N.M. 185, 152 P.3d 828; *see also State v. Gonzales,* 113 N.M. 221, 230–31, 824 P.2d 1023, 1032–33 (1992) (declining to reverse for ineffective assistance of counsel when counsel failed to move to sever felon in possession charge because on hindsight review court found no actual prejudice). The trial court, on the other hand, views the matter prospectively as to whether its error creates an "appreciable risk" of reversal on appeal. *Gallegos,* 2007–NMSC–007, ¶ 46, 141 N.M. 185, 152 P.3d 828. We emphasized in *Gallegos* that if the evidence pertaining to each charge would not be cross-admissible at separate trials-and evidence of previous crimes would rarely be cross-admissible-then "the trial court abuses its discretion when it fails to sever." *Id.* Absent an affirmative finding of cross-admissibility, the better practice is for the trial court to sever a felon in possession charge to avoid both error and the "appreciable risk" of reversal on appeal. *See* Susan W. Callan, *Inherent Prejudice of a "Felon–in–Possession" of a Firearm Trial: Bifurcation, Stipulation, and Jury Instruction as Effective but Judicially Rejected Remedies,* 28 Rutgers L.J. 201, 218 (Autumn 1996) (advocating either judicial determination of the "felon" element or bifurcation to address "the inherent prejudice in a felon-in-possession prosecution").

{14} Defendant has the burden of proving that he suffered prejudice from joinder of charges in this case. *Duffy,* 1998–NMSC–014, ¶ 42, 126 N.M. 132, 967 P.2d 807. In Defendant's case, there is no "appreciable

risk that the jury convicted for illegitimate reasons" because his felon in possession charge and the fact of his prior conviction never came before the jury. *Id.* (quoted authority omitted). Significantly, Defendant did not contest his guilty plea at the close of his trial and has never sought to withdraw that plea for reasons of duress or unfair coercion. Thus, he failed to properly preserve any issue arising from that plea for appellate review. Under the particular circumstances of this case, we affirm Defendant's conviction for felon in possession of a firearm.

## Impeachment

{15} Defendant argues that he was prejudiced when the State was allowed to impeach its own witness, Sonya Lovato, on redirect after she claimed a lack of memory on cross-examination. Defendant focuses on the manner of impeachment allowed by the trial court when the State used transcripts of that same witness's testimony in two prior proceedings-a prior trial and her preliminary hearing testimony in this same case. The State was allowed to impeach by reading into evidence prior statements of the witness without first asking questions and then using the transcript to impeach. Defendant claims this process denied him his right to a fair trial.

{16} We analyze Defendant's claim that the trial court improperly allowed impeachment for an abuse of discretion. *See State v. Stanley*, 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85. This is the same standard we apply to the trial court's decision to allow impeachment of a witness. *See State v. Roybal*, 33 N.M. 540, 544, 273 P. 919, 921 (1928); *Stanley*, 2001–NMSC–037, ¶ 33, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (quoted authority omitted).

{17} Defendant specifically contends that before a witness may be impeached by proof of prior inconsistent statements, the witness's attention must first be directed to what may be brought forth for that purpose, and that "this must be done with particularity as to time, place, and circumstances, so that [the witness] can deny it, or make any explanation intending to reconcile" what was formerly said with what is now being said. *State v. Fletcher*, 36 N.M. 47, 50, 7 P.2d 936, 938 (1932). The State counters that while this was traditionally the practice, such formality is no longer required. *State v. Southworth*, 2002–NMCA–091, ¶ 32, 132 N.M. 615, 52 P.3d 987; *State v. Gomez*, 2001–NMCA–080, ¶ 14, 131 N.M. 118, 33 P.3d 669.

{18} In *Gomez*, our Court of Appeals quoted the Advisory Committee Notes to Federal Rule of Evidence 613(b), identical to our Rule 11–613(B) NMRA, stating that the " 'traditional insistence that the attendance of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine on the statement, with no specification of any particular time or sequence.' " 2001–NMCA–080, ¶ 14, 131 N.M. 118, 33 P.3d 669. The Court correctly observed that the federal rule, identical to our Rule 11–613(B), "permits departure from the traditional, although often still preferred, method of confronting a witness with his inconsistent statement prior to its introduction in to evidence." *Gomez*, 2001–NMCA–080, ¶ 14, 131 N.M. 118, 33 P.3d 669.

{19} Based on Rule 11–613(B), current practice, and applicable precedent from our Court of Appeals, it appears that the prosecutor's course of examination was not error, and that it was within the discretion of the trial court to allow counsel to proceed in this manner. Defendant's objection to the form of questioning is based on a rigid formalism and outdated case law.

## Rebuttal Witnesses

{20} Defendant contends that the trial court's admission of testimony from the State's rebuttal witnesses was an abuse of discretion, in violation of his right to a fair trial. U.S. Const. amend. VI; N.M. Const.

art. II, § 14. The rebuttal testimony to which Defendant objects was given by Anthony Anaya ("Anaya"), Detective Yeager, and Monique Martinez ("Martinez"). While Defendant contends that none of the State's three rebuttal witnesses should have been allowed to testify, his argument focuses primarily on the rebuttal testimony given by Martinez. Therefore, we address the testimony of the first two witnesses summarily.

{21} Anaya is Defendant's cousin. The bulk of his testimony was elicited to rebut the testimony of Annette, and therefore constituted proper rebuttal testimony. Defendant mainly objects to the State's impeachment of this witness using a prior interview with Detective Yeager. However, our rules allow a party to attack the credibility of its own witnesses. Rule 11–607 NMRA. There was no error in the trial court's admission of Anaya's testimony.

{22} The State called Detective Yeager in rebuttal after Anaya had testified on cross-examination that when he approached Defendant's residence, he saw someone running from the house whom he could not identify. Detective Yeager testified that he had taken statements from Defendant, Annette, and Anaya on November 8, 2004, and none of these three people ever mentioned that there was anyone else present inside the house at the time of the shooting besides Victim, Carrasco, Defendant, Annette, Sonya Lovato, and Eddie Romero. This testimony was properly admitted to rebut Anaya's testimony.

{23} Martinez was not named on the State's witness list. The prosecution did not discover her as a potential witness until, coincidentally, she was waiting to attend drug court the same day she was presented as a witness. Based on what Martinez told the prosecutor about remarks she had overheard from Annette while both were incarcerated, the prosecution sought to add Martinez as a rebuttal witness. To mitigate any prejudice, the trial court allowed counsel for both Defendant and Co–Defendant to interview Martinez before the State called her as a witness. The interview lasted approximately half an hour. When counsel returned

to the courtroom, they claimed more time was needed to investigate Martinez's testimony and that the prosecution had interfered with their interview. The trial court offered to allow defense counsel to continue their interview of Martinez in the presence of the court, but they elected not to do so.

{24} On the stand, Martinez testified only as to the remarks she overheard about Defendant from Annette; there was no direct testimony. Martinez and Annette had been housed in the same area in jail for a brief period of time in December 2004. Martinez testified that she overheard Annette saying "more murder" as a joke to some of the inmates, and telling another inmate that Victim's "brains looked like hamburger meat and they were picking them up and putting them in a bucket." Defendant argues this testimony was bolstering, rather than rebuttal, and that Martinez's testimony was designed to paint Annette as a liar who did not take the charges against her seriously. By association, Defendant insists that he too was made to look callous and heartless, thus denying his right to a fair trial and destroying his presumption of innocence.

{25} Admission of rebuttal evidence is within the trial court's discretion and will not be disturbed on appeal, absent an abuse of that discretion. *Stanley,* 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85. We also review a trial court's decisions with regards to discovery for an abuse of discretion. *State v. Desnoyers,* 2002–NMSC–031, ¶ 25, 132 N.M. 756, 55 P.3d 968, *abrogated by State v. Forbes,* 2005–NMSC–027, 138 N.M. 264, 119 P.3d 144. The purpose of discovery before trial is to eliminate surprise and better ascertain the truth. *See State v. Manus,* 93 N.M. 95, 103, 597 P.2d 280, 288 (1979), *overruled on other grounds by Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982). However, the "[f]ailure to disclose a witness' identity prior to trial in itself is not grounds for reversal. The objecting party must show that he was prejudiced by such non-disclosure." *State v. Griffin,* 108 N.M. 55, 58, 766 P.2d 315, 318 (Ct.App.1988) (citations omitted).

{26} Legitimate rebuttal evidence consists of evidence on new matters, and not simply reiteration of evidence in chief. *Manus*, 93 N.M. at 103, 597 P.2d at 288. Determining what is true rebuttal evidence, however, can be difficult. " 'Frequently true rebuttal evidence will, in some degree, overlap or coalesce with the evidence in chief. Therefore, the question of admissibility of evidence on rebuttal rests largely on the trial court's discretion....' " *Id.* (quoting *State v. White*, 74 Wash.2d 386, 444 P.2d 661, 667 (1968)).

{27} Defendant has not demonstrated any actual prejudice. Martinez testified only about incriminating remarks made by Annette that concerned only Annette's observations of the scene. Annette said nothing about Defendant, and Martinez said nothing about Defendant. Any associative effect of that testimony on Defendant is merely the product of speculation.

{28} Moreover, in her own trial testimony, Annette left the impression that she was uninvolved in the events that led to Victim's shooting. The State may correct false impressions given to a jury by way of rebuttal evidence and testimony. *State v. Smith*, 92 N.M. 533, 540, 591 P.2d 664, 671 (1979). In addition, Defendant rejected the trial court's offer that Martinez be interviewed in the court's presence, and thus Defendant did not even attempt to cure the alleged problems from the first interview. Considering all of these circumstances, the trial court did not abuse its discretion when it allowed Martinez to testify as a rebuttal witness for the State.

## CONCLUSION

{29} We affirm Defendant's convictions.

{30} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA and PETRA JIMENEZ MAES, Justices.