This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                             **No. 28,782**

**FRANK LASKY,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant Frank Lasky appeals his convictions of armed robbery, attempted armed robbery, two counts of assault with intent to commit armed robbery, criminal damage to property, and possession of a firearm by a felon. The charges arose from the armed robbery of Kay's Oriental Store in Clovis, New Mexico in August 2006.

On appeal Defendant argues that his convictions violate double jeopardy, that he was denied the right to a fair and impartial jury, that his felon in possession of a firearm charge should have been severed from the other charges, and that he was prejudiced by prosecutorial misconduct. We address each of Defendant's arguments in turn.

**BACKGROUND**

On the day of the robbery, Soon Cho and Song Beams were working at Kay's Oriental Store. Defendant attempted to enter the store through a side door as Cho was taking out the trash. Cho told him to go to the front door, which he did. Defendant perused the store's aisles for approximately fifteen minutes. Cho asked if she could help Defendant, and they discussed the different types of candy that were available. Cho also offered for Defendant to use the phone to call his mother about what kind of candy he was looking for. As Defendant was standing next to Cho, discussing candy, he pulled out a handgun, pointed it at Cho's head, and demanded money. Cho complied by giving Defendant all the money from the cash register. Defendant, at this

point, had the gun pointed at Beams' back and said "[b]itches, give me your purse." When Beams told Defendant they did not have a purse, Defendant told her to shut up, and fired his gun at the ceiling and at a wall.

Karole Greco, Defendant's ex-girlfriend encountered Defendant on the day of the robbery. Defendant told Greco that the police were chasing him and that he had just robbed the store. He asked for her help, and she refused. Greco called the police to tell them what she had learned.

Within a week of the robbery, Beams and Cho were presented with separate photo arrays that included Defendant's picture. Both women identified Defendant as the man who had robbed them, and at trial both stated they were one hundred percent certain that they had made a proper identification.

**DISCUSSION**

We examine each of Defendant's appellate arguments successively. First, we determine that the district court did not abuse its discretion by refusing to sever the felon in possession of a firearm charge. Next, we determine that Defendant's claims of prosecutorial misconduct do not warrant reversal of his convictions. We then conclude that Defendant was not deprived of his right to a fair and impartial jury. Finally, we hold that Defendant's two convictions for assault with intent to commit armed robbery violate double jeopardy. We vacate the two counts of assault with

3

intent to commit armed robbery and remand to the district court for re-sentencing. On all other counts, we affirm.

**Severance**

Defendant argues that the district court erred by refusing to sever the felon in possession of a firearm charge from the other charges. He reasons that evidence of his prior felony, and thus his probation status, would not have been admissible in a separate trial of his other offenses and the knowledge of his prior conviction "infused distrust in him" and "blinded the jury to his defense." Defendant also argues the denial of severance constrained his constitutional right to remain silent because, once the jury learned of his prior conviction, Defendant was forced to testify in an effort to rebuild his character.

Under Rule 5-203(A)(2) NMRA, joinder is mandated for offenses based on the same conduct. Rule 5-203(C) allows the district court to grant severance "[i]f it appears that a defendant or the [prosecution] is prejudiced by a joinder of offenses[.]" We review for abuse of discretion the denial of a motion to sever. *See State v. Dominguez*, 2007-NMSC-060, ¶ 10, 142 N.M. 811, 171 P.3d 750. "[O]ne test for abuse of discretion is whether prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial." *Id.* (internal quotation marks and citation omitted). "[The d]efendant has the burden of proving that he suffered prejudice[.]" *Id.* ¶ 14.

Defendant's defense was that he was working in Albuquerque when the robbery took place. In order to refute Defendant's alibi, the State presented evidence that (1) Defendant was on probation when the robbery occurred and that he was not allowed to leave Clovis without a travel permit from the probation office; (2) Defendant was aware of the travel restriction and had actually used travel permits in the past; and (3) exactly one month prior to the robbery, Defendant used a travel permit to go to Albuquerque.

The State's theory of the case was that Defendant was in Clovis on the day of the robbery as evidenced, in part, by the fact that he had not requested a travel permit for the day of the robbery. Evidence is relevant when it "tends to establish a material proposition." *State v. Romero*, 86 N.M. 99, 102, 519 P.2d 1180, 1183 (Ct. App. 1974); *see* Rule 11-401 NMRA. Here, the fact that Defendant did not ask for a travel permit on the day of the robbery tends to establish the State's proposition that he did not travel outside of Clovis on that day. Thus, Defendant's probation status was relevant to rebut his alibi defense. Relevant evidence is generally admissible, except where its probative value is substantially outweighed by the danger of unfair prejudice. Rule 11-402 NMRA; Rule 11-403 NMRA. Defendant does not argue that the evidence of his probation was more prejudicial than probative and, for the reasons we just expounded, we do not agree with his argument that this evidence would not

have been admitted in a separate trial. Thus, we hold that the district court did not err in allowing the State to elicit testimony about Defendant's probation status from his probation officer.

With regard to the assertion that Defendant was forced to testify in order to rebuild his character, this argument was not preserved in the district court, therefore, we will not consider it on appeal. *See Vill. of Angel Fire v. Bd. of Cnty. Comm'rs of Colfax Cnty.*, 2010-NMCA-038, ¶ 15, 148 N.M. 804, 242 P.3d 371 (stating that "[i]n order to properly preserve an issue, it must appear that the party fairly invoked a ruling of the district court on the same grounds argued in the appellate court" and stating that "[w]e will not review arguments that were not preserved in the district court" (alterations omitted) (internal quotation marks and citation omitted)).

**Prosecutorial Misconduct**

Defendant describes four incidents of alleged prosecutorial misconduct that he believes deprived him of a fair trial. On this basis, he seeks reversal of his convictions and a new trial. We examine each claim of misconduct individually. In doing so, we apply an abuse of discretion standard of review. *State v. Stills*, 1998-NMSC-009, ¶ 49, 125 N.M. 66, 957 P.2d 51.

**A.     *Brady* Material**

Defendant claims that the State repeatedly failed to disclose *Brady v. Maryland*, 373 U.S. 83 (1963), material pertaining to Greco.  Specifically, Defendant alleges that the State possibly exchanged benefits for Greco's testimony and that the State withheld the fact that Greco's mental competency had been questioned in another case.

*Brady* is violated when the prosecution suppresses evidence favorable to the defense, thereby violating a defendant's due process rights.  *State v. Balenquah*, 2009-NMCA-055, ¶ 12, 146 N.M. 267, 208 P.3d 912.  In order to prevail in a *Brady* claim, a defendant must prove three elements: (1) "the evidence must have been suppressed by the prosecution[; (2)] the evidence must have been favorable to the defendant[;] and [(3)] the evidence must have been material to the defense."  *Id.*  (internal quotation marks omitted).  "[E]vidence is material under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *State v. Trujillo*, 2002-NMSC-005, ¶ 50, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted).

In a May 29, 2008, motion for a new trial, Defendant alerted the district court to the possibility that the district attorney's office had, in exchange for Greco's testimony, reduced charges and sentences that Greco was facing in unrelated criminal

matters. Based on these allegations, Defendant requested that the district court grant him a new trial. On June 6, 2008, before the district court ruled on the motion, Defendant filed a notice of appeal.

Rule 5-614(C) NMRA provides that when an appeal is pending a district court may grant a motion for a new trial only on remand. Here, Defendant did not request that his case be remanded for a decision on his motion, except in a footnote in his brief in chief to this Court. The motion was deemed automatically denied under a now obsolete provision of Rule 5-614(C) which read "[i]f a motion for new trial is not granted within thirty . . . days from the date it is filed, the motion is automatically denied."[1] Regardless, we will address the denial of the motion on its merits.

The claims made in Defendant's motion before the district court and in his brief in chief to this Court regarding "a potentially undisclosed deal between Greco and the State" are unsupported by the record. While Defendant included exhibits with his motion showing that Greco's criminal charges were disposed of through plea agreements, dismissals, probation, and pre-sentence confinement credit, there is nothing to indicate that the State's method of handling Greco's case was part of an exchange for her testimony against Defendant. Further, at a hearing on Defendant's

---

[1] The 2009 amendment to Rule 5-614 removed the automatic-denial provision quoted here.

motion, the prosecutor who handled Greco's criminal cases explained, under oath, why Greco's cases were handled as they were and testified that there was no benefit exchanged for Greco's testimony, and the handling of her case had nothing to do with Defendant. Likewise, the prosecutor in the case against Defendant swore in an affidavit that Greco was not given a deal in exchange for her testimony against Defendant. Conversely, with the exception of his own argument, Defendant did not present any evidence to contradict the prosecutor's statements or to otherwise support Defendant's position. *See State v. Cochran*, 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct. App. 1991) ("Argument of counsel is not evidence."). As there is no evidence in the record to support Defendant's claim, there is no issue for this Court to review. *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review.").

We turn now to Defendant's argument that the State violated *Brady* by withholding the fact that Greco's competency to stand trial for her own unrelated criminal charges had been questioned. The record in this case indicates that the State did not suppress the fact that Greco's competency had been questioned. Approximately five months before trial, Defendant filed a motion to determine Greco's competency. In a hearing on that motion, the State informed the district court that there had been concerns regarding Greco's competency in the past and suggested

9

that a psychological evaluation be conducted to determine whether she would be a competent witness in the present case. Defendant therefore fails to meet the first element of the *Brady* test, which requires proof that the evidence in question was suppressed by the prosecution. *See Balenquah*, 2009-NMCA-055, ¶ 12.

On the morning of trial, a competency hearing was held regarding Greco. The district court examined Greco and determined that she was competent to testify. At the hearing, defense counsel stated, "we believe [Karole Greco] is one hundred percent competent." Defendant has not shown how he was prejudiced or deprived of due process. His arguments lack merit. We need not address the two remaining *Balenquah* elements, as we determine that Defendant does not prevail on the first. *See id.* (explaining a defendant "must prove three elements" in order to prevail).

**B.     Opening Statement**

Defendant claims that the State's comments regarding Defendant's alibi during its opening statement amounted to prosecutorial misconduct. Defendant did not object to the opening statement during trial. Defendant asserts that the comments constitute plain error or fundamental error and that his convictions should be reversed on this basis.

Where an issue was not preserved at the district court level, this Court may nonetheless review for fundamental error or plain error. Rule 12-216(B)(2) NMRA; Rule 11-103(D) NMRA.

> The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done. The rule of plain error applies to errors that affect substantial rights of the accused and only applies to evidentiary matters.

*State v. Dartez*, 1998-NMCA-009, ¶ 21, 124 N.M. 455, 952 P.2d 450 (internal quotation marks and citation omitted).

"Whether this Court reviews for fundamental error or plain error, it must be convinced that [the error] constituted an injustice that creates grave doubts concerning the validity of the verdict." *Id.* ¶ 22 (internal quotation marks and citation omitted). As Defendant's argument does not concern an evidentiary matter, we limit our review to fundamental error. *See id.* ¶ 21. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted).

In this case, there was ample evidence of Defendant's guilt. The State presented testimony from two eyewitnesses who claimed, with one hundred percent

certainty, that Defendant was the man who robbed them at gunpoint. The State also presented evidence that Defendant confessed the crime to Greco. Additionally, the State played a recorded statement made by Defendant to the police in which he claimed to have been in Clovis on the day of the crime. When Defendant made the statement he knew he was a suspect in the robbery, yet he did not tell the police that he was working in Albuquerque that day, which is what he later claimed at trial. Considering the copious body of evidence supporting an inference of Defendant's guilt, we are not convinced that the prosecutor's comments during opening statement creates "grave doubts concerning the validity of the verdict." *Dartez*, 1998-NMCA-009, ¶ 22 (internal quotation marks and citation omitted).

Further, we are not convinced that the prosecutor's comments rose to the level of fundamental error. "An opening statement is intended to serve as a preview of the evidence to be admitted by one or both of the parties." *State v. Gilbert*, 99 N.M. 316, 319, 657 P.2d 1165, 1168 (1982). Here, the prosecutor told the jury that the defense had provided a notice of its alibi, urged the jury to question any biases the alibi witnesses might have, and to note the alibi's lack of proof. The defense also mentioned these alibi witnesses in its opening statement. Three alibi witnesses testified at trial, and both parties questioned them. Thus, the jury had an opportunity to hear from each alibi witness. The jury was also given UJI 14-101 NMRA that

12

instructed the jury to draw its own conclusions about the witnesses' credibility, interest, bias, prejudice, and reasonableness. As we presume that the jury followed its instructions, *State v. Sellers*, 117 N.M. 644, 650, 875 P.2d 400, 406 (Ct. App. 1994), we are not convinced that the State's comments during opening statement were sufficiently "persuasive and prejudicial" such that Defendant was deprived of a fair trial. *Allen*, 2000-NMSC-002, ¶ 95 (internal quotation marks and citation omitted).

**C.      Prior Conviction**

Prior to trial, the district court ruled that the State was permitted to elicit testimony from a probation officer regarding the fact that Defendant had a prior felony conviction, but that the State was not permitted to name the conviction. Nevertheless, during closing argument to the jury, the State mentioned that Defendant had a prior conviction for bribery of a witness. Defendant requested a mistrial based on the conviction being named.

The State argued that the judgment and sentence, which had been admitted into evidence without objection during Defendant's testimony reflected the name of the conviction and that the prosecutor therefore believed it was fair to name the conviction. The State also pointed to the fact that defense counsel had an opportunity to examine the document before it was admitted, yet failed to posit an objection. Defense counsel responded, stating, "I believe it is purely a misunderstanding," and

"it is defense's fault if we did not look at the judgment and sentence before it was admitted." Defense counsel assumed the document had been redacted based on the district court's ruling that the State could not elicit the name of Defendant's prior crime from the probation officer.

The district court declined to declare a mistrial. However, the district court warned the State against making further comment regarding the prior conviction and had the parties redact the documentary evidence to avoid further exposing the jury to the name of Defendant's prior felony. In the district court's determination, the State's mention of the prior conviction was ameliorated by the redaction and was minor as compared with the substantial amount of information that had been presented to the jury, thus rendering a mistrial unnecessary.

"The trial court has broad discretion in controlling the conduct and remedying the errors of counsel during trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807. We note that "the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors." *Id.* "Only in the most exceptional circumstances should we, with the limited perspective of a written record, determine that all the safeguards at the trial level have failed. Only in such circumstances should we reverse the verdict of a jury and the judgment of a trial court." *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348.

The conduct in question in this case does not rise to the type or level of persistent or egregious misconduct determined by our courts to require a new trial. *See State v. Breit*, 1996-NMSC-067, ¶ 42, 122 N.M. 655, 930 P.2d 792 (describing the prosecutorial misconduct as being "pervasive" where direct admonitions by the court were ignored and despite objections being raised and sustained, the prosecutor continued to solicit irrelevant testimony, directed belligerent remarks at defense counsel, and throughout trial, exhibited verbal and nonverbal conduct that were highly prejudicial); *State v. Huff*, 1998-NMCA-075, ¶ 23, 125 N.M. 254, 960 P.2d 342 (describing prosecutorial misconduct where there was a persistent and inappropriate line of questioning despite repeated warnings from the court and consistently sustained objections).

In this case, while the prosecutor may have disregarded or misconstrued a ruling, the district court immediately exercised its discretion in remedying the misconduct, and the indiscretion was not repeated after the district court warned the prosecutor. Under these circumstances, reversal is not warranted. We agree with the district court's discretionary ruling and determine that the comments did not so taint the trial as to require a mistrial. *Cf. Breit*, 1996-NMSC-067, ¶ 32 (barring retrial "when [prosecutorial misconduct] is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial").

Defendant further argues that the cumulative impact of the irregularities he asserts so prejudiced him that he was deprived the fundamental right to a fair trial. The doctrine of cumulative error "requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 101 N.M. 595, 600-01, 686 P.2d 937, 942-43 (1984). Here, only two conceivable errors occurred, namely the State's comment regarding Defendant's alibi during its opening statement and its later reference in closing argument to Defendant's prior conviction. The cumulative effect of these comments did not deprive Defendant of a fair trial. *See State v. Woodward*, 121 N.M. 1, 12, 908 P.2d 231, 242 (1995) (stating that the cumulative error doctrine is to be strictly applied and not invoked if the defendant received a fair trial), *aff'd in part, rev'd in part on other grounds sub nom. Woodward v. Williams*, 263 F.3d 1135 (10th Cir. 2001); *see also State v. Barr*, 2009-NMSC-024, ¶ 63, 146 N.M. 301, 210 P.3d 198 (stating "a defendant is entitled to a fair trial but not a perfect one" (alteration omitted) (internal quotation marks and citation omitted)). We reject Defendant's cumulative error argument.

**Jury Issue**

Defendant argues on appeal that his right to a fair and impartial jury and a juror's right to an interpreter were violated when the district court failed to obtain an

16

interpreter for a juror with limited English comprehension. On this basis, Defendant asks that we reverse his convictions.

After the jury retired to deliberate, a juror sent a note to the district court stating, "Mr. [Rivera] feels that he may have only understood [sixty-five] or [seventy percent] of the words that were used. He is worried he may make a mistake." The district court and attorneys for both sides, along with Mr. Rivera, discussed the matter. The district court explained it was too late to get a certified interpreter and considered the possibility of bringing one of the alternate jurors back to deliberate. The district court interviewed Mr. Rivera. During the interview, the juror explained that he understood sixty-five to seventy percent of the testimony from eye witnesses Cho and Beams, who spoke heavily accented English, and that he had trouble understanding a portion of the testimony of defense witness Margaret Montano. Mr. Rivera stated he fully understood the testimony from the seven other witnesses presented, including that of Defendant, two alibi witnesses, an investigator from the public defender's office, and three prosecution witnesses.

Mr. Rivera agreed, however, that he would be willing to try to deliberate, and if he found that he had trouble, he would alert the district court. After interviewing the alternate and learning that the alternate had discussed her "observation of what the verdict would be" with a detective and a police officer, the district court allowed the

17

attorneys to discuss the matter off the record to give them an opportunity to agree upon a solution.

When the record resumed, defense counsel stated "we have come up with a compromise solution. At least temporarily, [we] agree to allow [Mr. Rivera] to return and at least deliberate for a period of time, perhaps an hour, [to] see if he's able to do this. If not, maybe we can explore getting an interpreter." The State agreed. The district court confirmed with Mr. Rivera that he would be willing to "proceed to deliberate as a juror . . . [and] work through the evidence." Nothing further was heard from the jury until its verdict was delivered. The jury was polled and all indicated agreement on the verdict.

Eleven days after the guilty verdict was entered, Defendant filed a motion for a new trial on the grounds that Mr. Rivera had trouble understanding the testimony of three witnesses and that he had been deprived his right to an interpreter. Defendant also argued that he had been deprived of his right to a fair and impartial jury. At the time of the hearing on the motion for a new trial, the motion had been pending for more than 120 days, during which time Defendant had not taken adequate steps to secure a hearing. The district court denied the motion "based upon the time limits . . . it could have been docketed and we could have heard that within thirty days."

18

Defendant appeals from the denial of the motion for a new trial, and we determine that the motion fails on its merits.

We first note that at no point between learning that Mr. Rivera had somewhat limited English comprehension and the presentation of the verdict did Defendant move for a new trial. Rather, defense counsel waited until the jury delivered its verdict before filing a motion for a new trial. Second, requesting a new trial only after an unfavorable verdict may be considered "gamesmanship." *See State v. Nguyen*, 2008-NMCA-073, ¶ 22, 144 N.M. 197, 185 P.3d 368 (rejecting "the idea that a defendant may raise no objection to, and even encourage, a procedure designed to share an interpreter and then after he is convicted claim that the procedure requires reversal"); *see also State v. Arellano*, 1998-NMSC-026, ¶¶ 18-19, 125 N.M. 709, 965 P.2d 293 (expressing disdain for gamesmanship where defense counsel did not alert the court to the fact that the jury had not been sworn and waited for the verdict before objecting). As Defendant agreed to allow Mr. Rivera to deliberate and did not request a mistrial until after a verdict was delivered, he cannot prevail on a claim that the very agreement he made below requires reversal in this Court.

**Double Jeopardy**

Defendant argues and the State concedes that Defendant's convictions for armed robbery and assault with intent to commit armed robbery and his convictions

for attempted armed robbery and assault with intent to commit armed robbery were based on unitary conduct and violated double jeopardy. Although we are not bound by the State's concession, *State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775, we agree and reverse Defendant's two convictions for assault with intent to commit armed robbery.

We review the constitutional claim of a double jeopardy violation de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. Article II, Section 15 of the New Mexico Constitution prohibits double jeopardy, including claims "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Defendant raises a multiple punishment, double-description issue, arguing that his convictions charged under different statutes are based on the same conduct. A double-description claim requires us to consider whether Defendant is "charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). First, we determine "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes." *Id.* at 13, 810 P.2d at 1233. If the conduct is unitary, we then determine whether the Legislature intended to create separately punishable offenses based on the statutes at issue. *Id.* at 14, 810 P.2d at

20

1234. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment at the same trial." *Id.* at 13, 810 P.2d at 1233.

In determining whether conduct is unitary, this Court considers whether the defendant's acts are separated by "sufficient indicia of distinctness." *Id.* at 13-14, 810 P.2d at 1233-34.

> In making this determination, we look at whether the acts in question were separated in time and space, the quality and nature of the acts, and the objectives and results of the acts. We also consider whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses.

*State v. Schackow*, 2006-NMCA-123, ¶ 18, 140 N.M. 506, 143 P.3d 745 (internal quotation marks and citations omitted). "We answer the question of whether the Legislature intended multiple punishments for unitary conduct by asking whether each statute proscribing the offense requires proof of a fact the other does not." *State v. Carrasco*, 1997-NMSC-047, ¶ 23, 124 N.M. 64, 946 P.2d 1075.

The fact that Defendant pointed a gun at Cho's head and demanded money supported his convictions of assault with intent to commit armed robbery and armed robbery. The actions were not separated by time or space as they occurred almost simultaneously. Thus, they were unitary. Likewise, Defendant's simultaneous acts of pointing a gun at Beams' back and demanding a purse were used to support

21

convictions for both assault with intent to commit armed robbery and attempted armed robbery. Defendant's actions toward Beams were also unitary.

Having determined that the conduct was unitary, we turn to whether the Legislature intended separate punishments for the same conduct. In doing so, "we assess whether each statutory provision requires proof of an additional fact that the other does not, focusing on the elements of the offenses, not the evidence presented at trial." *Schackow*, 2006-NMCA-123, ¶ 21 (alteration omitted) (internal quotation marks and citation omitted). "Where the elements are the same, one crime may subsume the other." *Id.* The "enumeration of different aggravating factors, or alternative methods of committing an offense, [do] not evince a legislative intent to authorize multiple punishments for the same act." *State v. Crain*, 1997-NMCA-101, ¶ 20, 124 N.M. 84, 946 P.2d 1095. "[W]hen an offense may be charged in alternate ways, we look only to the elements of the statutes as charged to the jury and disregard the inapplicable statutory elements." *Schackow*, 2006-NMCA-123, ¶ 21 (internal quotation marks and citation omitted). We now turn to comparison of the elements of attempted armed robbery, armed robbery, and assault with intent to commit armed robbery.

Defendant was found guilty of assault with intent to commit armed robbery as to both Cho and Beams. In order to find Defendant guilty on these two counts, the

jury had to find that Defendant threatened each victim with a firearm, causing them to believe he was going to intrude on their bodily integrity or personal safety in a rude, insolent, or angry manner, and that in doing so, he intended to commit armed robbery of each victim. Defendant was also found guilty of attempted armed robbery of Beams and of armed robbery of Cho. For the jury to find Defendant guilty of these two crimes, the jury had to determine that Defendant used a deadly weapon and the threat of violent force as a means of attempting to deprive Beams and as a means of depriving Cho of their property.

"An offense is a true lesser included offense of another if its elements are completely subsumed by another, greater offense." *Swafford*, 112 N.M. at 12, 810 P.2d at 1232. Here, assault with intent to commit armed robbery is subsumed by the greater offenses of armed robbery and attempted armed robbery. In doing the acts that constituted assault with intent to commit armed robbery, specifically, threatening the victims with a firearm, Defendant simultaneously committed armed robbery of Cho and attempted armed robbery of Beams. Thus, we determine that Defendant's right to be free from double jeopardy was violated. We therefore vacate the two assault convictions and remand to the district court for re-sentencing in accordance with this determination. *See State v. Gonzales*, 2007-NMSC-059, ¶ 10, 143 N.M. 25, 172 P.3d

162 ("If double jeopardy is violated, [an appellate court] must vacate the conviction for the lesser offense.").

**CONCLUSION**

We vacate Defendant's two convictions for assault with intent to commit armed robbery and remand to the district court for re-sentencing. On all remaining convictions, we affirm.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**