This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37313**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RICHARD GIPSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NMSteven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Richard Gipson appeals the district court's denial of his motion to suppress blood test results following his conditional, no contest plea to driving while under the influence of intoxicating liquor or drugs (DUI), NMSA 1978, § 66-8-102(C)(1) (2010, amended 2016). Defendant argues the blood test results should have been suppressed because they were the product of a warrantless blood draw, without voluntary consent. Defendant additionally contends he received ineffective assistance of

counsel during the plea process, resulting in a plea that was not knowing and voluntary. We affirm.

**MOTION TO SUPPRESS**

**I.      Warrantless Blood Draws**

**{2}**      Defendant moved to suppress blood test results,[1] arguing that the warrantless blood draw was unconstitutional pursuant to the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160 (2016), which addressed, inter alia, implied consent laws requiring motorists to submit to warrantless blood draws under threat of criminal penalties. Under the New Mexico Implied Consent Act (ICA), NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019), anyone who operates a motor vehicle in New Mexico is deemed to have consented to chemical tests of his breath and/or blood if he is arrested for DUI, *see* § 66-8-107(A), and is subject to additional criminal penalties for refusing such testing, *see* § 66-8-102(D)(3). *Birchfield* held that a blood draw is a search subject to the warrant requirement and, contrary to implied consent laws like the ICA, motorists cannot be deemed to have consented to such a search on pain of committing a criminal offense. 136 S. Ct. at 2185-86. Our Supreme Court has accordingly declared that "[i]mplied consent laws can no longer provide that a driver impliedly consents to a blood draw." *State v. Vargas*, 2017-NMSC-029, ¶ 22, 404 P.3d 416. Voluntary consent to a blood draw, however, continues to serve as an exception to the warrant requirement. *See Birchfield*, 136 S. Ct. at 2186. Furthermore, a warrantless breath test incident to a lawful DUI arrest is still constitutionally permissible, and consent remains implied in such circumstances. *Id.* at 2185; *Vargas*, 2017-NMSC-029, ¶ 19.

**{3}**      This Court recently addressed the issue presented here—the voluntariness of consent to a warrantless blood draw in light of an ICA advisory. *See State v. Franklin*, 2019-NMCA___, ¶¶ 15-18, ___ P.3d ___ (No. A-1-CA-36905, Dec. 9, 2019). In *Franklin*, the defendant asserted his consent was per se invalid because he had been threatened with criminal penalties if he did not submit to the blood draw, pursuant to the ICA. *Id.* ¶ 7. We declined to adopt such a rule and instead held that "when a defendant . . . assert[s] his or her consent to a blood test was involuntary due to a partially inaccurate advisory, the district court must assess the voluntariness of the consent in light of the totality of the circumstances, including the improper implied consent advisory." *Id.* ¶ 16.

**II.      Relevant Background**

---

[1] Although Defendant's motion cited both the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, Defendant makes no argument that our New Mexico Constitution affords greater protections than the federal Constitution. We will not develop this argument for Defendant and, consequently, decline to consider it further. *See State v. Duttle*, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant."); *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031, 1037 (explaining that appellate courts do not review unclear or undeveloped arguments).

**{4}** In this case, Defendant was not threatened with heightened criminal penalties. Instead, according to officer testimony at the suppression hearing, Defendant was read a portion of the ICA prior to "consenting" to a blood draw. The officer testified that after Defendant performed poorly on field sobriety tests, Defendant was arrested, handcuffed, and placed in the back of the patrol unit. The following exchange, recorded via dashcam video, then occurred.[2]

Officer: The Implied Consent Act requires you to submit to a breath test, a blood test, or both, to determine the alcohol or drug content of your blood. After you take one or both of our tests you have a right to choose an additional independent test. . . . Do you agree to take our test?

    Defendant: And which test would that be?

    Officer: It's going to be a breath test, sir; you're going to blow into a machine.

    Defendant: And what's the blood test going to do?

    Officer: The blood test, we'll get a blood draw, if you wish, and then we'll send it out and go from there.

    Defendant: Let's do that.

    Officer: You want to do a blood test?

    Defendant: Yeah.

    Officer: Okay.[3]

**{5}** The officer never read Defendant the portion of the ICA relating to the imposition of criminal penalties for refusing chemical testing because Defendant did not refuse testing. The officer took Defendant to the hospital and provided a blood draw kit to the nurse, who performed the blood draw. The officer testified that there is a consent card in the blood draw kit and the officer asked Defendant if he wanted to sign the consent card but he did not. Defendant was cooperative during the blood draw and did not ask to stop the blood draw.

---

[2] The dashcam video was admitted into evidence and played at the suppression hearing but was not designated as an exhibit on appeal. *See* Rule 12-212(A) NMRA. The audio from the dashcam video, however, was captured on the hearing recording and is quoted herein.

[3] Defendant cites to another portion of the dashcam audio, in which he claims another officer told him, "You know you didn't have a choice, right?" Although we do not have the corresponding video, it is clear from our review of the record and the audio that the exchange cited by Defendant occurred between the testifying officer and a second officer and does not contain the aforementioned quotation.

**{6}**    Defendant and his wife also testified at the suppression hearing. They both testified to Defendant's mental impairment resulting from an accident in 2010. Defendant additionally testified that he felt he had to take a blood test. On cross examination, when asked, "Did you choose the blood test?" Defendant testified, "I believe so, I don't know, no." When Defendant testified that he "was offered both tests," he again was asked, "But you chose the blood test?" Defendant replied that he "didn't know what [he] was doing."

**{7}**    The district court took the matter under advisement and issued a letter decision, denying the motion to suppress. The district court reasoned that, under *Birchfield*, voluntary consent to a blood draw was still a permissible exception to the warrant requirement and such consent was given in this case. Defendant later pled no contest to DUI, reserving only the right to appeal the denial of his motion to suppress.

### III.    Voluntariness of Defendant's Consent to the Blood Draw

**{8}**    Defendant argues his consent to the blood draw was involuntary—due to the officer's ICA advisory among other things—and, consequently, the district court erred in denying his motion to suppress. "The voluntariness of a consent to search is a factual question. The government has the burden of proving that a consent to search was given freely and voluntarily." *State v. Anderson*, 1988-NMCA-033, ¶ 7, 107 N.M. 165, 754 P.2d 542 (citation omitted).

> Courts utilize a three-tiered analysis when determining voluntariness: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights. Because the third prong is an acknowledgment of our presumption against waiving constitutional rights, we focus on the first two prongs.

*State v. Davis*, 2013-NMSC-028, ¶ 14, 304 P.3d 10 (internal quotation marks and citation omitted). "The question is whether, given the totality of the circumstances, the consent was voluntary." *Anderson*, 1988-NMCA-033, ¶ 7; *see also Franklin*, 2019-NMCA-___, ¶ 16 (reviewing voluntariness under the totality of the circumstances).

**{9}**    In undertaking our review, we bear in mind the district court's role as fact-finder and the deference owed to that court as such.

> It is for the trial court to weigh the evidence, determine the credibility of witnesses and decide if the evidence is sufficient to clearly and convincingly establish that the consent was voluntary. The appellate court reviews the evidence in the light most favorable to the trial court's decision and will uphold the decision if it is supported by substantial evidence. The question is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different

conclusion. The finding of facts frequently involves selecting which inferences to draw. The possibility that on similar facts another trial court may have drawn different inferences and found the consent in this case [in]voluntary does not mean that we must reverse here.

*Anderson*, 1988-NMCA-033, ¶ 8 (citations omitted).

## A.     Specific and Unequivocal Consent

**{10}**    As for the first factor, Defendant argues his consent was equivocal because he refused to sign the consent form in the blood draw kit. The officer testified that Defendant verbally consented to the blood draw, and the dashcam audio confirms this. "Specific and unequivocal consent can be given in a variety of ways[,]" including "an affirmative and direct oral response to an officer's request to search," as here. *Davis*, 2013-NMSC-028, ¶¶ 16-18 (providing that consent may be given orally or in writing).

**{11}**    Defendant nevertheless contends that his subsequent declination to sign the written consent form amounted to a revocation of his earlier consent. Neither the law nor the record supports this contention. Defendant's apparent "claim that the subsequent refusal to sign a consent form operates to make the prior oral consent a nullity has been rather summarily rejected by the courts[.]" 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.2(f), at 133 (5th ed. 2012). Instead, a defendant's refusal to sign a written consent after providing oral consent is among the totality of the circumstances to consider when determining voluntariness. *See id.* at 134. And although Defendant declined to sign the consent card, there is no indication that his denial was meant to withdraw his earlier consent to the blood draw— indeed, he never asked to stop the test nor requested the alternative breath test. From this, the district court could reasonably infer that Defendant's declination to put his consent in writing was simply that and did not serve to revoke his prior verbal consent. *See State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 ("All reasonable inferences in support of the district court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." (alterations, internal quotation marks, and citation omitted)).

## B.     Consent Without Duress or Coercion

**{12}**    As for the second factor, Defendant makes various arguments why his consent was the product of duress or coercion, rendering it involuntary. "Coercion involves police overreaching that overcomes the will of the defendant." *Davis*, 2013-NMSC-028, ¶ 23 (internal quotation marks and citation omitted). "Specific factors indicating coercion include the use of force, brandishing of weapons, threat of violence or arrest, lengthy and abusive questioning, deprivation of food or water and promises of leniency in exchange for consent." *Id.*

**{13}**    Defendant emphasizes the fact that his consent was obtained only after he was arrested and placed in custody. While it is true that Defendant was handcuffed and

placed in the patrol unit prior to the officer requesting Defendant to submit to chemical testing, there is no indication in the record that this procedure was uncommon in a DUI arrest or exerted unusual pressure on Defendant. *See State v. Carlos A.*, 2012-NMCA-069, ¶ 22, 284 P.3d 384 (upholding the district court's determination of voluntary consent where the officer did not exert any unusual pressure on the child, the contact between the officer and the child took place quickly in a public setting, and the contact was not hostile). The officer calmly explained that Defendant was required to submit to chemical testing and eventually requested that Defendant submit to a breath test, to which Defendant's consent is implied. *See Vargas*, 2017-NMSC-029, ¶ 19. During the brief exchange, the officer remained congenial and, as captured by the dashcam audio, Defendant felt free to ask questions and express his testing preference for the more-invasive blood draw. *See State v. Munoz*, 2008-NMCA-090, ¶ 20, 144 N.M. 350, 187 P.3d 696 (concluding that the defendant's compliance with the officer's requests was not coerced based on the officer's non-confrontational demeanor). There was no use of force, threats of violence or promises of leniency, lengthy or abusive questioning, or repeated requests for consent. *See Davis*, 2013-NMSC-028, ¶ 23. Under these circumstances, we are not persuaded by Defendant's claim that the fact he was under arrest or in custody rendered his consent a product of coercion.[4] *See State v. Herring*, 1966-NMSC-266, ¶¶ 13, 21, 77 N.M. 232, 421 P.2d 767 (explaining that "[a]lthough the fact that consent is given while in custody or under arrest is clearly a factor to consider, we do not believe that such a situation makes voluntary consent impossible").

**{14}** Defendant also contends his request for and consent to the blood draw was "a mere acquiescence to a claim of lawful authority[,]" *Davis*, 2013-NMSC-028, ¶ 23 (internal quotation marks and citation omitted), because the officer advised Defendant that he was required to submit to chemical testing, per the ICA. We first observe that the officer's advisory in this case was, at most, partially inaccurate—i.e., breath tests are still lawful searches incident to DUI arrests, *see Vargas*, 2017-NMSC-029, ¶ 19, and there is no indication in the record that Defendant was threatened with what *Birchfield* found constitutionally offensive—i.e., heightened criminal penalties for refusing to submit to a blood test, *see* 136 S. Ct. at 2186. *See State v. Shaulis-Powell*, 1999-NMCA-090, ¶¶ 11-12, 127 N.M. 667, 986 P.2d 463 (citing LaFave for the proposition that "it is not coercion for an officer to accurately inform the individual of his precise legal situation" and noting that an assertion by an officer that he could obtain a warrant does not invalidate a subsequent consent where there is probable cause to support the warrant (alteration, internal quotation mark, and citation omitted)). Further, to the extent that Defendant argues his consent was per se involuntary due to the officer's advisory,

---

[4] Likewise the fact that Defendant was asked to submit to chemical testing without being informed he could refuse testing and without being *Mirandized* does not persuade us to the contrary. "We have previously stated that proof of knowledge of the right to refuse is not required in order to have effective consent." *State v. Flores*, 2008-NMCA-074, ¶ 16, 144 N.M. 217, 185 P.3d 1067 (internal quotation marks and citation omitted); *see also City of Rio Rancho v. Mazzei*, 2010-NMCA-054, ¶¶ 24-25, 148 N.M. 553, 239 P.3d 149 (concluding that a defendant arrested for DUI was not entitled to receive a *Miranda* warning prior to being given an implied consent advisory or chemical testing because the law does not require such warnings for physical evidence). "Rather, the presence or absence of such knowledge is but one factor to consider in the matrix to determine whether a consent to search is voluntary." *Flores*, 2008-NMCA-074, ¶ 16.

this approach was necessarily rejected in *Franklin*, 2019-NMCA___, ¶ 16, by our application of the totality of circumstances test and would run contrary to our well-established approach to determining voluntariness, *see Davis*, 2013-NMSC-028, ¶¶ 13, 23 (examining the totality of circumstances, including a claim of lawful authority, in determining voluntariness); *Shaulis-Powell*, 1999-NMCA-090, ¶¶ 9, 12 (same). Here, the district court could reasonably determine that the advisory, even if partially inaccurate, was overcome by other circumstances, including the officer's subsequent inquiry to Defendant whether he agreed to a test—in particular, a breath test—and Defendant's selection of a blood draw instead.

**{15}** Defendant also contends that his mental impairment supported his claim of involuntary consent. While Defendant testified that due to an accident in 2010, he is "not all there," a review of the dashcam audio shows that Defendant asked pointed questions about the testing, clearly chose the blood test upon inquiry by the officer, and at no point indicated he did not understand the officer or what was going on. *Cf. State v. Gutierrez*, 2011-NMSC-024, ¶¶ 16, 21, 150 N.M. 232, 258 P.3d 1024 (observing that the child never indicated any problems with comprehension and gave detailed responses in determining that there was a knowing, intelligent, and voluntary waiver of *Miranda* rights). The district court's letter decision indicates it gave little, if any, weight to the evidence about Defendant's impairment or his testimony that he did not know what he was doing and he had no choice but to take a blood test. And this was well within the district court's discretion. *See State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 ("recognizing that the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility" and "deferring to the district court's factual findings so long as substantial evidence exists to support those findings").

**{16}** In sum, viewing the evidence in the light most favorable to the district court's ruling and considering the totality of the circumstances, we hold substantial evidence supports a finding that Defendant's will was not overborne and his consent to the search was voluntary. We therefore affirm the district court's denial of Defendant's motion to suppress the blood evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL

**{17}** Defendant next argues that his "plea was not knowing and voluntary because he received ineffective assistance of counsel and the judge conducted an insufficient colloquy." Defendant acknowledges this issue was not reserved in his plea for appellate review. *See* Rule 5-304(A)(2) NMRA (setting out procedure for reserving appellate issues in a conditional plea agreement). More critically, however, Defendant's arguments are directed at the validity of his plea, and there is no indication in the record that Defendant challenged his plea in district court through a motion to withdraw or otherwise. As this Court repeatedly has held, "if a defendant fails to file a motion to withdraw a plea in the district court, he or she cannot attack the plea for the first time on direct appeal" and instead must seek relief in collateral proceedings. *State v. Andazola*, 2003-NMCA-146, ¶ 25, 134 N.M. 710, 82 P.3d 77; *see also State v. Dominguez*, 2007-NMSC-060, ¶ 14, 142 N.M. 811, 171 P.3d 750 (holding that the defendant failed to

preserve his objection to his guilty plea because he failed to move to withdraw his plea in district court). In sum, we do not review Defendant's claims relating to the validity of his plea, including the contention that he received ineffective assistance of counsel; pursuit of these claims must occur in collateral proceedings.

**CONCLUSION**

**{18}**    For the foregoing reasons, we affirm.

**{19}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**